## IN RE WILLIAM R. III ET AL.*
### (AC 20934)

Lavery, C. J., and Dranginis and Hennessy, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

539

Argued June 6—officially released September 11, 2001

*Scott M. Maser*, for the appellant (respondent mother).

*Maureen D. Regula*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

HENNESSY, J. The respondent mother appeals from the judgments of the trial court terminating her parental rights with respect to her minor children, R and D.[1] The respondent claims that the court improperly found (1) that she had failed to rehabilitate herself within the meaning of General Statutes (Rev. to 1999) § 17a-112 (c) (3) (B), now (j) (3) (B), (2) that the petitioner, the department of children and families (department), had made reasonable efforts to reunify R and D with her pursuant to § 17a-112 (c) (1), now (j) (1), and (3) that it was in the best interests of R and D to terminate her parental rights. We affirm the judgments of the trial court.

On June 1, 1999, the department filed petitions requesting termination of the parental rights of the respondent in her children, D, R and W.[2] Each petition alleged that the child was committed to the department, the child having been found in a prior proceeding to be neglected or uncared for, and that the respondent had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the life of the child. A contested hearing was held on those petitions, and on May 1, 2000, the court terminated the respondent's parental rights in D and R.

[1] A third child, W, who suffers from infantile autism, was the subject of a petition to terminate the parental rights of the respondent and the child's father. The court dismissed the petition, but ordered that W remain in the custody of the commissioner of the department of children and families. The respondent did not appeal from that judgment. The father of D appealed from the judgment terminating his parental rights, but the appeal was dismissed by this court for lack of diligence. The father of R died during the pendency of his appeal from the judgment terminating his parental rights in R.

[2] The court dismissed the petition to terminate the parental rights of the respondent and the father of W on the basis of the court's conclusion that it was not in the best interest of the child to do so.

In a written memorandum of decision, the court found the following facts. D was born on June 9, 1990, and R was born on January 27, 1993. On June 17, 1996, the department, acting on an anonymous referral, investigated the apartment where the respondent, her boyfriend and W, R and D were residing. The home had no electricity, little food and the family, which was four months in arrears in the payment of the rent, was about to be evicted. The respondent and her boyfriend admitted using heroin on a daily basis and needing the drugs to function on a daily basis. The department concluded that there were not enough facts to warrant removing the children at that time, but entered into a service agreement with the respondent wherein she would attend a substance abuse evaluation and treatment program, cooperate with the department and maintain a secure home for the children. Approximately one month later, the respondent was arrested and jailed. The children were taken to the respondent's sister who, after keeping them for a few days, took them to the police because she was unable to care for them. On July 26, 1996, the court issued an order of temporary custody, placing the children in the department's care. On that day, the department filed petitions alleging that the respondent had neglected the children in that they were homeless. On October 24, 1996, the court adjudicated the children neglected in that they were homeless and committed them to the department. The commitment was extended several times, and on June 1, 1999, the department filed petitions to terminate the parental rights of the respondent in all three children.

I

The respondent first claims that the court improperly found that she had failed to rehabilitate herself within the meaning of § 17a-112 (c) (3) (B), now (j) (3) (B).[3]

[3] General Statutes (Rev. to 1999) § 17a-112 (c) (3), now (j) (3), provides in relevant part that a court may grant a petition to terminate parental rights if it finds by clear and convincing evidence that "(B) the parent of a child

Specifically, the respondent argues that the court made no mention of any concerns regarding her parenting abilities or mental health, but relied on the length of time it took her to attain a period of sobriety. The respondent argues that the stability and security of the residential treatment facility in which she now resides has provided her with not only the ability to remain drug and alcohol free for approximately one year, but also will provide her, in the near future, with a place to be reunited with her children.

"The standard for review on appeal [from a termination of parental rights] is whether the challenged findings are clearly erroneous. . . . On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *In re Kasheema L.*, 56 Conn. App. 484, 488, 744 A.2d 441, cert. denied, 252 Conn. 945, 747 A.2d 522 (2000).

"[Section 17a-112 (c) (3) (B)] requires parental rights to be terminated if by clear and convincing evidence it is established that the respondent's level of rehabilitation falls short of the level which would encourage the belief that within a reasonable time, considering the age and needs of the child, the parent could assume a responsi-

who (1) has been found by the Superior Court to have been neglected or uncared for in a prior proceeding, or (2) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and such parent has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

ble position [in the life of the child]. . . . Thus, the statute requires the trial court to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . *In re Luis C.*, 210 Conn. 157, 167, 554 A.2d 722 (1989)." (Internal quotation marks omitted.) *In re Hector L.*, 53 Conn. App. 359, 366–67, 730 A.2d 106 (1999).

The court concluded that the respondent's "lack of rehabilitation is demonstrated by the very long time that she took to begin the first rehabilitative steps in dealing with her substance abuse. [The department] worked with her with extensive services after the children were removed. Only in the past year has she responded positively to those services. [The respondent's] recovery from her addiction has consumed a significant period of time in her children's lives. There is no certainty about the stability of her recovery. Further, the psychological expert testified that at least two more years of sobriety will now be required before it could be concluded that she could safely parent these children. . . . The difficulty lies not with the progress she has made, but with the length of time that is still required."

The respondent has had a substance abuse problem for many years. She was first arrested for possession of narcotics in 1993, and during the next three years was arrested and periodically incarcerated for larceny and drug related offenses. The children were removed from the home of the respondent while she was in jail in 1996 and have been in foster care since that time. The respondent was arrested and convicted of possession of narcotics in July, 1997, and was expelled from a family reunification program in May, 1999, when she was sentenced to jail as a result of a larceny conviction. The respondent entered a residential drug treatment program in July, 1999. Rudolfo Rosado, the court-appointed

psychologist who examined the respondent in 1997, 1998 and 2000, testified that a few months of sobriety are insufficient to secure a change in her behavior and that there would have to be a demonstration of behavioral change that is longer because the pattern of substance abuse has existed for the past twenty years.

The respondent contends that Rosado did not evaluate her for the purpose of aiding the court in determining whether her parental rights should be terminated and that he argued that he lacked key information to determine her ability to assume a responsible position in the lives of her children. The respondent further argues that commentators have recognized that psychological evaluations such as the one in this case are often unreliable and erroneous when it comes to predicting future behavior. She further argues that those weaknesses in the department's presentation preclude it from providing the clear and convincing evidence required to meet the mandate of the statute.

A review of the record clearly shows that the court took into consideration the fact that Rosado could neither speak for nor against termination of the respondent's parental rights, that he never assessed the nature of the relationship between the foster father and the children or the effect of the separation of W from his brothers.[4] The court found that the evaluations of the family in 1997, 1998 and 2000 provided necessary information and assistance in making its decision. Rosado testified that D and R had an "anxious attachment" to the respondent, which was not healthy, and that he did not observe an emotional closeness between the children and the respondent. The fact that the respondent, with help offered by the department for a period of years, could not secure a stable home or demonstrate

---

[4] W, as a result of his being afflicted with infantile autism, has been attending a special school and resides away from his brothers.

the parenting skills necessary to create a safe environment for the children provided the court with clear and convincing proof that she had not rehabilitated herself. The court considered the fact that after almost four years, the evidence suggested that, despite some progress on the respondent's part in addressing her problems with substance abuse, more time was needed and that even then, the respondent would have to rebuild her relationship with children who had entered a new family. The children have been in foster care for approximately four years and have demonstrated an attachment to their foster parents.[5]

The court found, and the record confirms, that since 1996, when the children were adjudicated homeless and removed from the respondent, the children have been in foster care, and the respondent has been effectively unavailable to parent her children and unable to benefit successfully from the programs offered by the department. Although the respondent has made progress in addressing her substance abuse problems, that has been accomplished in a structured residential program. Rosado advised the court that as a result of the past decades of drug and alcohol abuse, the respondent would require another two years of participation in the program to prepare her to parent the children safely. Under those circumstances, we cannot conclude that it was clearly erroneous for the court to have found by clear and convincing evidence that the respondent had not achieved such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the ages and needs of the children, that she could assume a responsible position in their lives.

---

[5] The foster mother's death was hard for the children. The foster father, however, has expressed a desire to adopt both children.

## II

The respondent next claims that the court improperly concluded that the department had made reasonable efforts to reunify R and D with her pursuant to § 17a-112 (c) (1).[6] Specifically, the respondent contends that the department never set up family counseling or individual counseling for the children to work on issues that prevented the family from reuniting, nor did the department seek a residential placement for the respondent where she could reside with the children.

To terminate parental rights under § 17a-112 (c), now (j), the department is required to prove by clear and convincing evidence that it has made reasonable efforts to reunify the children with the parent unless the court finds that the parent is unable or unwilling to benefit from reunification efforts. In accordance with § 17a-112 (c) (1), now (j) (1), the department may meet its burden concerning reunification in one of three ways: (1) by showing that it made such efforts, (2) by showing that the parent was unable or unwilling to benefit from reunification efforts or (3) by a previous judicial determination that such efforts were not appropriate.

We conclude that the court properly found that the department met its burden. The department referred the respondent to a family therapy program at the Bridgeport child guidance clinic. The respondent reported that the program was unsuccessful in that no one spoke during the session. The department also

---

[6] General Statutes (Rev. to 1999) § 17a-112 (c), now (j), provides in relevant part that the court may, upon hearing and notice, grant a petition to terminate parental rights if it finds by clear and convincing evidence "(1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing pursuant to subsection (b) of section 17a-110 or section 17a-111b that such efforts are not appropriate . . . ."

referred the respondent to the Boys Village program, which has a therapeutic parent-child component. The respondent was not present for many of the visits to her home where the sessions were held, and the program ended when the respondent was imprisoned as a result of a larceny conviction. The respondent attended Alcoholics Anonymous and Narcotics Anonymous programs, parenting programs, counseling and vocational training programs, and was referred to family counseling and for a psychological evaluation of her interaction with her children. The residential drug program in which she is presently participating is the one program that has not been interrupted or rendered ineffective by the respondent's return to drug or alcohol abuse.

The respondent further argues that the department failed in its reunification efforts when it did not place the children with her in the residential substance abuse program that she entered in July, 1999. The department points out that the respondent made no such request, that termination petitions had been filed after all attempts to help the respondent during a three year period had failed and the court had determined, after a hearing, that further efforts toward reunification no longer were appropriate.[7]

The respondent also claims that the department failed to arrange for individual counseling for the children to enable them to prepare for reunification with her. The department found that the children were responding well to their foster family environment and were not in need of special counseling. When the foster mother died, the children were supported by the school social worker, school nurse and the principal, all of whom shared a close relationship with the foster family and the children. The court, as a result of the changes that

---

[7] On May 12, 1999, the court, *Rogers, J.*, rendered a finding that further efforts were no longer appropriate.

would come about from the granting of the termination of parental rights petitions, directed that a therapy program be made available to the children. Given the department's efforts, we cannot conclude that the court's finding that the department had made reasonable efforts to reunite the children with the respondent was clearly erroneous.

## III

The respondent further claims that the court improperly found that it was in the best interests of the children, R and D, to terminate her parental rights. The respondent argues that not only is the record devoid of expert testimony showing how an adoption will affect the three children, but that it also fails to reflect consideration by the court of problems in the foster home concerning discipline, and problems between the foster children and the other children in the home. The respondent also argues that the court failed to consider the lack of awareness by the foster father of the importance of counseling for the children and the fact that the children want to return home, all of which militate against a finding by the court that terminating the respondent's parental rights is in the best interests of R and D.

The department contends that the problems in the foster home were minimal, and neither R nor D were the subject of allegations concerning the discipline of a child in the home. Although seven year old R stated that he wanted to return to his parents, the reasons for the statement lacked clarity: He could not recall living with his parents or any memories of their life together and did not express that he loved or missed his parents. D had no memories of his life with his mother, and indicated that he was happy and felt safe in his foster home. The record supports the department's contentions and also the fact that the court ordered that ther-

apy be made available to the children. Although the foster father stated that he would not allow contact between the respondent and the children once he adopted them, he agreed to cooperate in arranging therapy for the children, and also therapy involving the children and the respondent if that was found to be beneficial.

"In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in § 17a-112 (d), now (k).[8] On appeal, we will dis-

---

[8] General Statutes (Rev. to 1999) § 17a-112 (d), now (k), provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided or made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

turb the findings of the trial court in both the adjudication and disposition only if they are clearly erroneous." *In re Tabitha P.*, 39 Conn. App. 353, 361–62, 664 A.2d 1168 (1995). The court's written opinion contained detailed findings as to the disposition pursuant to § 17a-112 (d). Those findings can be summarized as follows. The services that the department offered to the respondent and the children during a period of approximately four years in an attempt to facilitate their reunification were timely and appropriate. The respondent failed to comply with the service agreements with the department, and because of her substance abuse and periods of incarceration, she was unable to sustain involvement in the available programs, thereby resulting in her not being able to achieve a stable family environment. Both children have some feelings for their mother, but her inability to parent and lack of understanding of the problems the children were experiencing as a result required other persons to assume responsibility for providing the necessary stability in the lives of the children. R, born January 27, 1993, and D, born June 9, 1990, have been in foster care since June, 1996. The respondent has, during the last year, made some improvement in her life by entering a residential substance abuse program, but as a result of her twenty year history of substance abuse, the time required to complete her residential program and safely reunite with her children would not be in their best interests.

After reviewing the court's decision and the evidence contained in the whole record, we conclude that the court's finding that termination of the respondent's parental rights in the children, R and D, is in their best interests is not clearly erroneous.

The judgments are affirmed.

In this opinion the other judges concurred.