IN RE EBONY H.*
(AC 22047)

Lavery, C. J., and Dranginis and Bishop, Js.

Submitted on briefs January 7—officially released February 19, 2002

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Raymond J. Rigat* filed a brief for the appellant (respondent mother).

*Richard Blumenthal,* attorney general, and *Maureen D. Regula* and *Susan T. Pearlman,* assistant attorneys general, filed a brief for the appellee (petitioner).

*Opinion*

BISHOP, J. The respondent mother appeals from the judgment of the trial court terminating her parental rights.[1] On appeal, the respondent claims that the court improperly found that the petitioner, the commissioner of children and families (commissioner), had made reasonable efforts to reunify her and her child, and, therefore, that the court violated General Statutes § 17a-112 (j) when it terminated her parental rights.[2] We affirm the judgment of the trial court.

---

[1] The court also terminated the parental rights of the respondent father. Because he has not appealed from the judgment, we refer in this opinion to the respondent mother as the respondent.

[2] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon hearing and notice as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . (2) that termination is in the best interest of the child, and (3) that . . . (B) the child . . . (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

Our review of the record discloses the following relevant facts. On April 19, 1999, the court, *Alander, J.*, adjudicated the child neglected and committed her to the protective custody of the commissioner after concluding that she was living under conditions injurious to her well-being. On that day, the court also prescribed specific steps that the respondent must take to regain custody of the child. See General Statutes § 46b-129 (j).[3] Those steps included the following: The respondent was required (1) to attend all appointments with the department of children and families (department), (2) to participate in individual counseling, including anger management and domestic violence counseling, (3) to submit to a substance abuse assessment and follow recommendations regarding treatment, (4) to complete substance abuse treatment successfully, including inpatient treatment if necessary and (5) to submit to random drug testing.

On March 15, 2000, the court, *Conway, J.*, extended by twelve months the child's commitment to the protective custody of the commissioner. On that same day, the commissioner filed a petition to terminate the respondent's and the father's parental rights to the

---

[3] General Statutes § 46b-129 (j) provides in relevant part: "Upon finding and adjudging that any child or youth is uncared-for, neglected or dependent, the court may commit him to the Commissioner of Children and Families for a maximum period of twelve months, unless such period is extended in accordance with the provisions of subsection (k) of this section, provided such commitment or any extension thereof may be revoked or parental rights terminated at any time by the court, or the court may vest such child's or youth's care and personal custody in any private or public agency which is permitted by law to care for neglected, uncared-for or dependent children or youth or with any person or persons found to be suitable and worthy of such responsibility by the court. The court shall order specific steps which the parent must take to facilitate the return of the child or youth to the custody of such parent. . . ."

"The specific steps are also considered 'fair warning' of the potential termination of parental rights in subsequent proceedings pursuant to [General Statutes] § 17a-112." *In re Jeffrey C.*, 64 Conn. App. 55, 62, 779 A.2d 765, cert. granted in part, 258 Conn. 924, 783 A.2d 1027 (2001).

child. In her petition, the commissioner alleged that (1) the department had made reasonable efforts to locate the respondent and the father, (2) the department had made reasonable efforts to reunify the child with the respondent and the father, (3) the respondent and the father were unable or unwilling to benefit from reunification efforts, (4) the child had been found in a prior proceeding to have been neglected or uncared for, and (5) the respondent and the father had failed to achieve such a degree of personal rehabilitation that would encourage the belief that either could assume a responsible position in the life of the child within a reasonable period of time.

On March 13, 2001, the court, *Esposito, J.*, extended the child's commitment again, and found, pursuant to a motion for review of the child's permanency plan, that it was not appropriate for the department to continue to make efforts to reunify the child with the respondent or the father. On April 23, 2001, the commissioner filed an amended petition to terminate the respondent's and the father's parental rights in which she updated the specific factual allegations she previously had alleged in support of termination.

The court, *Conway, J.*, commenced trial on the amended petition on April 26, 2001. On May 30, 2001, the court rendered judgment terminating the parental rights of the respondent and the father pursuant to § 17a-112 (j). In so doing, the court concluded, inter alia, that (1) the department had made reasonable efforts to reunify the child with the respondent, (2) termination was in the best interest of the child and (3) the respondent had failed to achieve the requisite degree of personal rehabilitation. See General Statutes § 17a-112 (j) (1), (2) and (3) (B) (ii). On June 21, 2001, the respondent filed the present appeal, challenging only the court's finding that the department had made reasonable efforts to reunify her and the child.

In rendering judgment, the court found the following facts. The child was born on May 26, 1997. Because the respondent was imprisoned at the time of the birth, the child was discharged from the hospital to the custody of a maternal aunt. When the respondent was released from prison in September, 1997, she assumed custody of the child and, soon thereafter, moved into a motel. In January, 1998, the state successfully prosecuted the respondent after testing revealed that she had been using cocaine. The respondent and the child were placed in an alternative incarceration program for women with babies. Two months later, the respondent was transferred to a prison; she was released in April, 1998.

In November, 1998, the respondent was arrested on a domestic violence charge and, again, was successfully prosecuted; she was imprisoned for one month and placed on three years probation. The respondent later "threatened or physically assaulted two of the three [department] social workers assigned to the case."

In the months following April, 1999, the respondent did not comply with some of the specific steps that had been prescribed by the court: She failed to attend counseling sessions for anger management, and she failed to attend domestic violence counseling sessions. In October, 1999, the respondent was enrolled in an inpatient substance abuse program. She quit the program one month later. The department then referred the respondent to a series of outpatient substance abuse programs. The respondent, nevertheless, failed to keep her appointments and continued to test positive for cocaine use. Finally, on November 21, 2000, the respondent enrolled in an inpatient program at Connecticut Valley Hospital (hospital) and successfully completed a forty-five day substance abuse treatment program.

Upon completing the program, the respondent asked the department to assist her in obtaining housing. In

response, the department "did nothing more than make one telephone call to Community Action with no follow up." Nine days after the respondent completed the forty-five day program, a drug test revealed that she once again was using cocaine. In March, 2001, the respondent sought to enroll in another outpatient substance abuse program. She, nonetheless, missed each of three appointments that had been scheduled to admit her into the program. Finally, the court found that as of the conclusion of the termination proceedings, the respondent continued to use cocaine and that the child had spent more than three of her four years of life in foster care.

The court concluded that the department had "made reasonable efforts to reunite the parents with [the child]." It noted that the department had worked with the respondent on trying to find suitable drug treatment programs. It noted also that the department had offered intensive family preservation services as far back as 1998 and that the respondent and the father had refused those services. Although the department's response to the respondent's request for assistance in obtaining housing following her stay at the hospital had been "shameful and far beneath any acceptable level of professional conduct," the commissioner proved "by clear and convincing evidence that reasonable efforts had been made to reunify [the child] with her parents." The department had made multiple referrals for the respondent to assist her in overcoming her cocaine addiction. Additionally, the court concluded: "Neither respondent parent has been prevented from maintaining a meaningful relationship with [the child] by any unreasonable act or conduct of each other or any other person, agency or economic circumstances. . . . Cocaine addiction and a failure to follow through on counseling are the factors that prohibit reunification

with the [respondent]." Additional facts and procedural history will be presented as necessary.

We now address the respondent's claim that the court improperly concluded that the department had made reasonable efforts to reunify her and her child. Specifically, the respondent contends that the court's finding that the department responded inadequately to her request for assistance in obtaining housing following her stay at the hospital precludes a finding that the department had made reasonable efforts to reunify her and her child. We disagree.

"To terminate parental rights under § 17a-112 (c), now (j), the department is required to prove by clear and convincing evidence that it has made reasonable efforts to reunify the children with the parent unless the court finds that the parent is unable or unwilling to benefit from reunification efforts. In accordance with § 17a-112 (c) (1), now (j) (1), the department may meet its burden concerning reunification in one of three ways: (1) by showing that it made such efforts, (2) by showing that the parent was unable or unwilling to benefit from reunification efforts or (3) by a previous judicial determination that such efforts were not appropriate." *In re William R. III*, 65 Conn. App. 538, 546, 782 A.2d 1262 (2001). "The trial court's determination of this issue will not be overturned on appeal unless, in light of all of the evidence in the record, it is clearly erroneous."[4] *In re Daniel C.*, 63 Conn. App. 339, 361, 776 A.2d 487 (2001).

[4] "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In applying the clearly erroneous standard to the findings of a trial court, we keep constantly in mind that our function is not to decide factual issues de novo. Our authority, when reviewing the findings of a judge, is circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence. . . . The question for this court . . . is not whether it would have made the findings the trial court did, but whether in view of the evidence and pleadings in the whole record

"The term reasonable efforts was recently addressed by this court: Turning to the statutory scheme encompassing the termination of the parental rights of a child committed to the department, the statute imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child or children with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) Id., 361. "[R]easonableness is an objective standard . . . and whether reasonable efforts have been proven depends on the careful consideration of the circumstances of each individual case." (Internal quotation marks omitted.) Id., 362–63.

Our review of the evidence admitted at the trial disclosed the following additional relevant facts. Clarence Coles, a department social worker, testified that the respondent, upon her release from the hospital, had moved in with the father of the child and that the department had continued to schedule weekly visitation sessions with the child for the respondent and the father. Coles' testimony was uncontradicted. Sally Fleming, a department social worker and supervisor, testified that the child, at the time of trial, was living with a foster family and that she had been living with that same family for two years. Her testimony was also uncontradicted. Thus, the evidence admitted at the trial indicates that, at the time the respondent was released from the hospital, she did not have custody of the child and had not had custody for quite some time. More importantly, it

it is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Doyle* v. *Kulesza*, 197 Conn. 101, 105, 495 A.2d 1074 (1985).

indicates also that the respondent had a place to live and that the department was arranging visits with the child for her.

Notwithstanding the court's finding that the department's response to the respondent's request for assistance in obtaining housing was shameful and unacceptable, our review of the evidence admitted at the trial does not leave us with a definite and firm conviction that the court mistakenly found that the department had made reasonable efforts to reunify the respondent and the child. The evidence overwhelmingly supports the court's findings that the department, on numerous occasions, had enrolled the respondent in treatment programs to assist her in overcoming her cocaine addiction, and that that addiction, coupled with her failure to attend counseling sessions on anger management, thwarted the department's efforts to reunify her and the child. As a general proposition, a court, in determining whether the department made reasonable efforts to reunify a parent with a child, may consider the degree of assistance the department provided that parent in obtaining housing. Nevertheless, the court, in the present case, properly discounted the significance of the department's lapse in that regard. As previously indicated, we recognize that the department is not required to do everything possible to reunify a parent with a child. With that principle in mind and in light of the evidence admitted at the trial, we conclude that the court's finding that the department made reasonable efforts to reunify the respondent and the child is not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.