## IN RE DESTINY D. ET AL.*
(AC 23751)

Foti, West and McLachlan, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued September 13—officially released November 16, 2004

*David P. Bartels*, certified legal intern, with whom were *Jean Koh Peters*, supervising attorney, and, on the brief, *Eliza Leighton, Debra Stump, Kabrina Kau, Marc Silverman* and *Ric Casper*, certified legal interns, for the appellant (respondent mother).

*Jane R. Rosenberg*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Eliot D. Prescott, Sonia S. Stoloff* and *Benjamin Zivyon*, assistant attorneys general, for the appellee (petitioner).

*Opinion*

McLACHLAN, J. The respondent mother appeals from the judgments of the trial court terminating her

parental rights in her three minor children.[1] She claims on appeal that the court improperly found (1) that the department of children and families (department) made reasonable efforts to reunify the family and (2) that there was no ongoing parent-child relationship between herself and one of the minor children.[2] We affirm the judgments of the trial court.

The respondent is a forty-seven year old woman with a long history of drug and alcohol abuse. The three children who are the subjects of the terminations are D, who was born June 15, 1990, and J and S, twins who were born on August 4, 1991. On June 13, 1999, the respondent struck D while she was intoxicated and under the influence of crack cocaine. The respondent was subsequently taken into custody by the police, and the department invoked a ninety-six hour hold on the three children. On June 15, 1999, the court granted an order of temporary custody and, on September 8, 1999, the children were adjudicated neglected. D was placed in a foster home in Bridgeport and, after initially being placed together with their paternal aunt, the twins were placed in separate foster homes.

The respondent continued to abuse drugs until October, 1999, approximately four months after the children were placed in the custody of the petitioner, the commissioner of children and families (commissioner), when, after a referral by the department, the respondent sought substance abuse treatment from the APT Foundation. The respondent's participation in the APT pro-

---

[1] The court also terminated the parental rights of the putative father of D, and the rights of the father of J and S. Neither father has appealed. We therefore refer in this opinion to the respondent mother as the respondent.

[2] Although the respondent raised and briefed the additional claim that the court improperly concluded that the department had proved the additional ground that she failed to achieve a sufficient degree of personal rehabilitation, as required in General Statutes § 17a-112 (j) (3) (B), she conceded that claim at oral argument before this court.

gram was disappointing; she attended approximately one half of her appointments and tested positive for cocaine and marijuana seven times. In December, 1999, she was discharged from the program for noncompliance.

The respondent then attended a substance abuse treatment program at the Hospital of Saint Raphael, which she did not complete. She was discharged in March, 2000. That same month, she enrolled in the Yale Psychiatric Institute's dual diagnosis partial hospitalization program (Yale program), which is designed to address both mental health and substance abuse issues. When admitted, the respondent was depressed, actively abusing drugs and engaging in self-mutilating behavior. Her diagnosis on admission was posttraumatic stress disorder, alcohol dependence, cocaine abuse and borderline personality disorder. The respondent's performance in the program also was disappointing. Her attendance was erratic, and she generally was resistant to the staff's treatment recommendations. She also tested positive for alcohol at least once and positive for cocaine three times. She was discharged from the program in May, 2000, and her diagnosis remained unchanged.

After her discharge from the Yale program, the respondent was incarcerated at York Correctional Institution and began serving a one year sentence for an assault charge related to the incident with D. While incarcerated, the respondent voluntarily enrolled in the Marilyn Baker House residential substance abuse treatment program. The respondent completed that program in November, 2000, and, in May, 2001, was released from prison. During the respondent's incarceration, the department's permanency plan changed from reunification to the termination of the respondent's parental rights and, in April, 2001, the commissioner filed petitions for termination of the respondent's parental rights.

Despite some success with treatment programs in prison, the respondent relapsed soon after her release. Following the completion of her sentence in May, 2001, the respondent again enrolled in the Yale program. Although the respondent had a more constructive attitude about recovery and maintained more consistent attendance at the Yale program during her second attempt, she tested positive for cocaine and was discharged from the Yale program in July, 2001.

Approximately one month later, she enrolled in the Yale program for a third time. This time, her diagnosis on admission was more serious and included posttraumatic stress disorder, alcohol dependence, cocaine dependence, cannabis dependence, opiate abuse and borderline personality disorder. The respondent's third attempt at the Yale program also was unsuccessful. She generally was not open to treatment recommendations and tested positive for cocaine three times. She was discharged from the Yale program in September, 2001, with a recommendation by staff that she enroll in a residential rehabilitation program, rather than in another outpatient program, because a more intensive treatment regimen might yield greater success. In October, 2001, the respondent was admitted to the Crossroads/Amethyst House (Crossroads) inpatient substance abuse program. She successfully completed the Crossroads program and was discharged in March, 2002.

While the respondent was participating in the Crossroads program, trial commenced on the termination of parental rights petitions. Throughout the sixteen day trial, the commissioner presented testimony from nine witnesses, including a court-appointed psychological evaluator, two department case workers, a department supervisor, three therapists who worked with the children and two psychiatrists who worked with the respondent. In November, 2002, the court granted the petitions

to terminate the respondent's parental rights as to all three children. This appeal followed.

## I

The respondent first claims that the court improperly concluded that the department had made reasonable efforts to reunify her with her children. We disagree.

"It is axiomatic that in seeking to terminate parental rights, the commissioner must prove by clear and convincing evidence that the department made reasonable efforts to reunify the parent and child as required by [General Statutes] § 17a-112 [j] (1)." (Internal quotation marks omitted.) *In re Amanda A.*, 58 Conn. App. 451, 454, 755 A.2d 243 (2000). "The term reasonable efforts was recently addressed by this court: Turning to the statutory scheme encompassing the termination of the parental rights of a child committed to the department, the statute imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child or children with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) *In re Daniel C.*, 63 Conn. App. 339, 361, 776 A.2d 487 (2001). "On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported; every reasonable presumption is made in favor of the trial court's ruling and we will disturb the findings of the trial court . . . only if they are clearly erroneous." *In re Amanda A.*, supra, 455.

Examining the department's efforts in light of the particular circumstances of the present case, we con-

clude that there was adequate evidence on which the court could have concluded that the department had made reasonable efforts to reunify the respondent with her children. The court's memorandum of decision details the department's efforts at reunification, including providing regular visitation between the respondent and her children, arranging rehabilitative services for the respondent, and arranging counseling and therapy for the three children.

At trial, department staff testified as to the regular visitation provided to the respondent and her children. According to testimony from social worker Michael Milano and supervisor Jean Gombos, the respondent had supervised visits with her children approximately every other week from August until September, 1999, when the court ordered visitation to occur every week. That schedule continued until July, 2000, when the court ordered visitation reduced to once every three weeks because the respondent had begun serving her one year sentence at York Correctional Institution, and the lengthy trip to the prison for visiting hours required that the children be taken out of school. That visitation schedule continued after the respondent's release from prison and during her treatment at Crossroads. There was testimony that, with certain rare exceptions, visitation occurred as scheduled. Furthermore, the respondent's testimony as to the frequency of visits with her children conformed to the schedule testified to by department witnesses.

There also was ample evidence in the record supporting the court's finding that the department provided various rehabilitative services to the respondent to address her substance abuse and mental health problems. Milano testified that the respondent was referred by the department to the APT Foundation and Central Treatment Unit for substance abuse treatment. Although there were intervals during the department's

involvement with the respondent when referrals were not made, there was credible evidence that referrals at those times would have been unnecessary or impossible. For example, following the respondent's discharge from the APT Foundation, she was referred by the APT Foundation to a treatment program at the Hospital of Saint Raphael, thereby obviating the need for the department to make an additional referral. After the program at the Hospital of Saint Raphael, the respondent enrolled herself in the Yale program; thus, the need for a referral by the department was redundant. There also was testimony that beginning in March, 2000, the respondent refused to sign releases authorizing the department to give or to receive information about her treatment, thereby making it impossible for the department to make any additional referrals for the following six months.

The record further reveals that the department provided various counseling and therapy services for the respondent's children. The department arranged for the children to be evaluated to assess behavioral problems and obtained recommendations for appropriate treatment and services. With respect to D, the department arranged for her to obtain therapy at the Bridgeport Child Guidance Center on a weekly basis for a two year period and to receive counseling through her school.

The services provided to S and J included arranging for a social work clinician from Intensive Family Preservation Services to visit the twins in their home and weekly individual therapy for S at his school. The department also arranged for a psychologist to visit S and J in their foster home, and enrolled S in an extended day program at Boy's Village. The department arranged for J to receive individual therapy at school with a social worker and to receive tutoring services. The department also made several unsuccessful attempts to obtain additional services for J, including referring her to pro-

grams at Boy's Village, the Children's Center Community Program, Inc., and St. Francis. All three programs declined to provide her services due to her mild mental retardation.

As previously stated: "[R]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) *In re Daniel C.*, supra, 63 Conn. App. 361. The credible testimony by department workers and treating physicians provides an adequate basis for the court's conclusion that the department made reasonable efforts to reunify the family. The court's conclusion, therefore, was not clearly erroneous.

## II

The respondent claims that the court improperly found that there was no ongoing parent-child relationship, as defined in § 17a-112 (j) (3) (D). "Because the statutory grounds necessary to grant a petition for termination of parental rights are expressed in the disjunctive, the court need find only one ground to grant the petition. Thus, we may affirm the court's decision if we find that it properly concluded that any one of the statutory circumstances existed." (Internal quotation marks omitted.) *In re Vanna A.*, 83 Conn. App. 17, 25–26, 847 A.2d 1073 (2004). The respondent has conceded that the court properly found that there was clear and convincing evidence that she failed to achieve the required degree of personal rehabilitation demanded by the statute, but maintains her challenge to the court's finding that no ongoing parent-child relationship existed between her and her children in order to preserve that issue for a hoped for new trial. We need not address that claim because we have concluded that the court correctly determined that the department made reasonable efforts to reunify the respondent with her children and because the respondent concedes that

grounds for termination exist pursuant to § 17a-112 (j) (3) (B).

The judgments are affirmed.

In this opinion the other judges concurred.