# IN RE JONATHAN C. ET AL.*
## (AC 24081)

Dranginis, DiPentima and McLachlan, Js.

Argued September 15—officially released November 23, 2004

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*David J. Reich*, for the appellant (respondent mother).

*Carolyn Signorelli*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (petitioner).

*Opinion*

McLACHLAN, J. The respondent mother appeals from the judgments of the trial court terminating her parental rights in her three minor children.[1] On appeal, the respondent claims (1) that the court improperly concluded that she was unable or unwilling to benefit from reunification efforts undertaken by the department of children and families (department) and, alternatively, (2) that the department failed to make reasonable efforts to reunify her with her children.[2] We affirm the judgments of the trial court.

The respondent is a thirty-one year old woman with a history of emotional and psychological issues stemming

---

[1] The court also terminated the parental rights of the fathers of the three children. Robert C., the father of C, and Orlando R., the father of R, consented to the termination of their parental rights. The court, after trial, terminated the parental rights of Juan C., the father of J. Because none of the fathers has appealed, we refer in this opinion to the respondent mother as the respondent.

[2] Although the respondent's statement of issues identifies only the claim that the department failed to undertake reasonable reunification efforts, her oral argument and, to a more limited extent, portions of her brief, addressed the additional alternative claim that the court improperly concluded that she was unable or unwilling to benefit from reunification efforts. We consider both claims because the petitioner, the commissioner of children and families, addressed the additional issue on the merits both in her brief and at oral argument.

from traumatic childhood experiences, including emotional, sexual and physical abuse, and physical neglect. The three children who are the subject of the termination are C, born August 16, 1990, R, born September 6, 1992, and J, born July 20, 1997.

On July 7, 1999, the petitioner, the commissioner of children and families (commissioner), invoked a ninety-six hour hold on the three children and filed neglect petitions alleging that the children were being denied proper care and living under conditions that were injurious to their well-being. The neglect petitions alleged that (1) the children were continuously left in the care of their maternal grandmother, who had psychiatric and health conditions that prevented her from properly caring for the children,[3] (2) the two younger children were sometimes cared for by the oldest child, then eight years old, while the respondent slept, (3) the children were observed playing near an open second floor window with no screens or bars for safety and (4) the children were observed playing unsupervised in a hallway while in the care of their maternal grandmother. The court subsequently issued ex parte orders of temporary custody.

On August 5, 1999, those orders were vacated, and the children were returned to the respondent, who was ordered by the court not to leave the children in the care of their maternal grandmother. During that period of reunification with her children, the respondent failed to keep the department apprised of her whereabouts and living conditions, and the court became concerned about that and other ongoing issues regarding the children's care. Those concerns prompted the court to issue

---

[3] There was evidence in the record that the maternal grandmother was a diagnosed schizophrenic and diabetic, and often was sedated. There was testimony that while under the care of the maternal grandmother, J almost drowned in a fish tank and was saved by a nurse health aide who happened to be at the residence assisting the grandmother.

a second round of orders of temporary custody in October, 1999. The whereabouts of the respondent and the children were not known until December, 1999, at which time the children were taken into custody by the department. On December 16, 1999, the court sustained the orders of temporary custody. Following that second removal, the department placed the children in therapy and enrolled the respondent in parenting classes, which she successfully completed in February, 2000.

On April 12, 2000, the children were adjudicated neglected, but were returned to the respondent's care under an order of protective supervision for a period of six months, due in part to the respondent's completion of the parenting class. Also in April, 2000, the court ordered the respondent to comply with specific steps aimed at facilitating reunification, and a parent aide was put in place to assist the respondent in complying with those steps. Due to the respondent's continued difficulty with caring for the children, the commissioner again filed motions for orders of temporary custody in November, 2000, which the court granted. Pursuant to the orders, the children were placed in foster care with the paternal grandmother of C. On March 2, 2001, the court adjudicated the children neglected and committed them to the custody of the commissioner. Petitions for termination of parental rights were filed by the commissioner on December 5, 2001. During an eleven day trial, the court heard from several witnesses, including numerous department workers, the children's teachers, and treating physicians and therapists. The petitions were granted on February 13, 2003. This appeal followed.

Before separately addressing each claim, we note the statutory requirement underlying them. General Statutes § 17a-112 (j) (1) requires that before terminating parental rights, the court must find by clear and convincing evidence that the department "has made reason-

able efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate . . . ." Thus, "the department may meet its burden concerning reunification in one of three ways: (1) by showing that it made such efforts, (2) by showing that the parent was unable or unwilling to benefit from reunification efforts or (3) by a previous judicial determination that such efforts were not appropriate." (Internal quotation marks omitted.) *In re Ebony H.*, 68 Conn. App. 342, 348, 789 A.2d 1158 (2002). "The trial court's determination of this issue will not be overturned on appeal unless, in light of all of the evidence in the record, it is clearly erroneous." (Internal quotation marks omitted.) Id.

I

The respondent first claims that the court improperly concluded that she was unable or unwilling to benefit from reunification efforts. We disagree.

In its memorandum of decision, the court stated: "The court finds by clear and convincing evidence that [the respondent was] unable or unwilling to benefit from reunification efforts." In support of that finding, the court enumerated the extensive reunification efforts undertaken by the department.

The court's forty-eight page memorandum of decision relates that the department arranged for monthly meetings with all service providers involved with the family to discuss specific needs and how best to address them, facilitated visitation throughout the duration of its involvement with the family and referred the respondent to numerous services, including the Bridgeport housing authority to help her obtain housing, and ECAR,

a comprehensive agency that addresses a broad range of parenting needs.

Testimonial and documentary evidence in the record demonstrates how many of those efforts were met with apathy and a lack of cooperation by the respondent. For example, the record reveals that a letter was hand delivered to the respondent in August, 2001, with an appointment date and time with ECAR. That appointment was not kept, and the respondent never rescheduled. A department worker made another referral in 2002, but the respondent cancelled both scheduled appointments. The respondent also failed to follow through with another program aimed at improving parenting skills. The respondent and the children were enrolled in a program at the Child Guidance Center in Bridgeport, but their treatment was terminated after the respondent attended only two of eight scheduled appointments.

Although the respondent participated in various rehabilitative programs, sometimes on her initiative, her performance in many of them was poor. A therapist working with the respondent stated that there was a total denial of any responsibility by the respondent for the children's problems.

The court also related the respondent's repeated failures to adhere to the specific steps ordered by the court aimed at facilitating reunification. The court explained that on five different occasions during the department's involvement with the respondent, specific steps were issued to facilitate reunification with her children. Those steps, issued between April, 2000, and August, 2001, included that the respondent secure and maintain adequate housing and legal income, keep the department apprised of her whereabouts, cooperate with both announced and unannounced home visits, submit to random drug testing and to substance abuse treatment,

participate in individual, family and parenting counseling, cooperate with the children's therapists and educational providers in learning to understand their specific needs, and consistently and timely meet and address the children's physical, educational, medical and emotional needs, including keeping their appointments with medical, psychological and educational providers.

Although the respondent complied with some of the steps, she failed to comply with many others. For example, the court remarked on the respondent's lengthy history of instability and inconsistency in housing, including numerous evictions. The department had on record ten different addresses for the mother between 1994 and 2000. The respondent's brief acknowledges that she "had persistent issues regarding adequate housing for herself and her three children."

The court accepted the testimony of a department worker who, on numerous occasions, requested to see the respondent's apartment to determine whether the housing was safe and suitable. The worker testified that the respondent did not readily make her address known to the department and was unwilling to allow department workers to see her apartment. There also was testimony that the department sent mail, including referral information and counseling and visitation notices to the respondent's post office box, and that most of that was returned as undeliverable due to the respondent's failure to maintain the box. The respondent also continued to leave the children in the care of their maternal grandmother in violation of a specific court order.

The court also found that the respondent's record of visitation with the children was inconsistent; she missed approximately eight visits between October, 2001, and July, 2002, because she either cancelled, failed to appear or failed to arrange for visits in conformity

with court-ordered protocol. The respondent also missed numerous scheduled telephone calls with the children. Those failures to maintain consistent contact had a negative effect on the children.

With regard to the requirement that the respondent cooperate with the children's therapists, educators and medical providers, the court noted that the respondent was not in contact with the children's teachers and failed to attend therapy sessions for the children, even though all three children had special needs and suffered from serious physical, emotional and educational problems. A department worker assigned to assist the respondent with the specific steps testified that she offered to help register the children for school but that the respondent refused and the children missed the first four or five days of the school year. The court accepted the testimony of C's third grade teacher that by the time he entered her classroom, he had been in approximately eleven different schools, consistently maintained poor attendance and was working below grade level in reading, written expression, mathematics, science and social studies. The same teacher also had R in her classroom and testified that he had been in seven schools, maintained similarly poor attendance, was functioning below grade level in certain areas and had special education needs.

Although physical examinations were scheduled for the children, those appointments were missed. In addition to failing to attend to the children's general medical needs, the respondent neglected to address the children's specific medical needs, which included failing to obtain treatment for R, who was diagnosed with posttraumatic stress disorder, encopresis and enuresis. During visits to the home, a department worker observed that R and J did not have any underwear because the respondent would throw away soiled underwear rather than washing it. That department

worker testified that she went to a store herself and purchased each of the children a package of underwear.

The respondent also failed to provide J with desperately needed dental care. A department worker testified that J had serious bottle tooth decay and that, as a result, he had only half of his front teeth and that the remaining teeth were black in color. J was scheduled for dental surgery in May, 2000, but the respondent missed the appointment. By the time of the termination, J had lost all of his front teeth due to the untreated bottle rot. A referral also was made to a program to address J's aggressive behavior, but the respondent refused that service.

The respondent also failed to comply with the steps requiring her to submit to drug testing and substance abuse treatment and to follow the recommendations of her service providers. The respondent consistently refused to participate in a substance abuse evaluation, including one requested by her therapist, and prevented the department from assessing any substance abuse issues. The respondent's refusal to submit to a urine screen also resulted in the premature termination of her treatment at the Center for Behavioral Health at St. Vincent's Hospital in Bridgeport.

Rodolfo J. Rosado, an expert in the area of clinical forensic psychology and children's developmental psychology, who performed a clinical evaluation of the respondent, testified at trial and submitted an evaluation that was admitted into evidence in which he wrote, in relevant part: "[The respondent] received professionally appropriate services that had potential to improve the quality of her life and lead to significant change. Unfortunately, on both occasions [the respondent] precipitously . . . stopped attending potentially beneficial treatment services. This inability to utilize and benefit from supportive professional interventions sug-

gests the presence of psychopathology that interferes with [the respondent's] ability to sustain and profit from interpersonal resources. The inability to utilize appropriate professional services also contributes to a very poor prognosis for the possibility of continued personal growth." Similar concerns were echoed by another provider who worked with the respondent in a parent aide program. In her monthly client contact reports, that social worker identified ongoing concerns about the respondent's ability to address issues before they reach crisis status, and her propensity to be resistant in complying with department stipulations and obligations.

Throughout the duration of the department's involvement with the family, the respondent demonstrated a lack of cooperation and progress, and revealed an apathetic attitude toward the repeated and extensive reunification efforts that were made. The evidence before the court, highlighted in its memorandum of decision, more than adequately supports its determination that the respondent was unable or unwilling to benefit from the department's reunification efforts.

The respondent's brief provides little in the way of supporting evidence to rebut the court's finding that she did not respond productively to the services that were made available to her by the department. Beyond the mere assertion that the respondent was in fact willing and able to benefit from such efforts, the respondent cites little credible supporting testimony or documentation. We accordingly conclude that there existed in the record clear and convincing evidence to support the court's conclusion that the respondent was unable or unwilling to benefit from reunification efforts.

II

The respondent next claims that the court improperly concluded that the department made reasonable efforts to reunify her with her children. We disagree.

As noted previously, the statutory requirement of § 17a-112 (j) (1) may be satisfied in any one of three ways: (1) by showing that the department made reasonable efforts to reunify; (2) by showing that the parent was unable or unwilling to benefit from reunification efforts; or (3) by a previous judicial determination that such efforts were not appropriate. See *In re Ebony H.*, supra, 68 Conn. App. 348.

"The term reasonable efforts was recently addressed by this court: Turning to the statutory scheme encompassing the termination of the parental rights of a child committed to the department, the statute imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child or children with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) *In re Destiny D.*, 86 Conn. App. 77, 82, 859 A.2d 973 (2004). "On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported; every reasonable presumption is made in favor of the trial court's ruling and we will disturb the findings of the trial court . . . only if they are clearly erroneous." (Internal quotation marks omitted.) Id.

It is the respondent's contention that the court's memorandum of decision could be construed to conclude, as an alternative to its determination that the respondent was unable or unwilling to benefit from reunification efforts, that reasonable reunification efforts were made. To the extent that the memorandum of decision could be so interpreted, we conclude that there was

adequate evidence from which the court could have concluded that the department made reasonable efforts to reunify the respondent and the children. Those efforts, more fully detailed in part I, included providing numerous referrals for services, facilitating visitation and providing therapy for both the respondent and the children.[4]

The judgments are affirmed.

In this opinion the other judges concurred.

---

[4] Although the court's memorandum of decision may not distinctly state that the court found by clear and convincing evidence that reasonable reunification efforts were made, such a finding was not necessary and would have been redundant, as the court already had concluded by clear and convincing evidence that the respondent was unable or unwilling to benefit from such efforts.