# IN RE KRYSTAL J. ET AL.*
## (AC 24630)

Foti, Dranginis and Bishop, Js.

Argued January 10—officially released April 5, 2005

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*David B. Rozwaski,* for the appellant (respondent mother).

*Lorri M. Kirk,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman* and *Monica A. Moncrieffe,* assistant attorneys general, for the appellee (petitioner).

*Mary Claire Collier,* for the minor children.

*Opinion*

DRANGINIS, J. The respondent mother[1] of three minor children appeals from the July 22, 2003 judgment of the trial court denying her motion to revoke commitment with respect to her three minor children and approving the permanency plan requested by the petitioner, the commissioner of children and families (commissioner). On appeal, the respondent claims that the court improperly (1) determined that sufficient cause for commitment remained and (2) found that the department of children and families (department) had made reasonable efforts to provide services to the family to enable the respondent to reunify with her minor children. We affirm the judgment of the trial court.

The record discloses the following facts and procedural history relevant to this appeal. On August 28, 2000, the commissioner invoked a ninety-six hour hold on the three children who are the subject of this appeal and their older brother in response to the department's

---

[1] The youngest child's father also was a respondent in the underlying proceedings. Because he is not a party to this appeal, however, we refer in this opinion to the children's mother as the respondent.

investigation into allegations of physical abuse toward the older brother and verbal abuse toward the other three children. The commissioner applied for and obtained orders for temporary custody of all four children on September 1, 2000. The children were committed to the custody of the commissioner on July 18, 2001, and the commitments subsequently were extended until further order of the court.[2] From the time that the commissioner obtained orders of temporary custody for the children, the children have lived with their maternal aunt.

When the children were committed to the custody of the commissioner, the respondent was ordered, among other things, to engage in individual and family counseling to help her manage her anger. Although the department made several referrals for the respondent, she refused these services, first claiming that she could not pay for them herself and then, when the department secured funding for these services, she simply refused them. The respondent repeatedly stated that she did not need therapy and, according to the testimony of an expert who had examined the respondent, refused to take responsibility for her role in the children's commitment to the custody of the commissioner. She also refused to permit employees of the department to enter her home or, via an interstate compact agreement, to permit employees of New York's child protection agency to enter her New York residence to determine whether either residence was an appropriate place to rear the children.

The respondent filed a motion to revoke commitment of her three minor children. Shortly thereafter, the department filed a motion for review of its permanency plan for the children. The court received evidence relat-

---

[2] Upon reaching his eighteenth birthday, the older brother signed a "refusal of services" form and left the care of the department.

ing to these motions on April 8, July 11 and July 12, 2003. The court subsequently denied the respondent's motion to revoke commitment of her three minor children and approved the commissioner's permanency plan. The court also found that the department had made reasonable efforts toward reunification and that such efforts no longer were appropriate considering the respondent's unwillingness to benefit from them. This appeal followed.

I

The respondent first claims that the court improperly denied her motion to revoke commitment of her three minor children. Our review of this claim is controlled by General Statutes § 46b-129 (m), which provides in relevant part: "The commissioner, a parent or the child's attorney may file a motion to revoke a commitment, and, upon finding that cause for commitment no longer exists, and that such revocation is in the best interest and welfare of such child or youth, the court may revoke the commitment of any child or youth. . . ." "The burden is clearly upon the persons applying for the revocation of commitment to allege and prove that cause for commitment no longer exists. Once that has been established, the inquiry becomes whether a continuation of the commitment will nevertheless serve the child's best interests." (Internal quotation marks omitted.) *In re Alexander C.*, 60 Conn. App. 555, 559, 760 A.2d 532 (2000). "On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the

evidence in the whole record, clearly erroneous." (Citation omitted; internal quotation marks omitted.) *In re Cesar G.*, 56 Conn. App. 289, 293, 742 A.2d 428 (2000).

In this case, the respondent claims that the court improperly denied her motion for revocation of commitment. Specifically, the respondent argues that the court improperly determined that she had refused services offered by the department and that she had not adequately addressed any psychological or psychiatric issues linked with her difficulty in controlling her anger. The court heard testimony from Melissa Haffner, a therapist who provided individual counseling to the respondent for a total of four hours and group anger management therapy for a total of eight hours. This counseling stemmed from a court order requiring the respondent to undergo anger management or face criminal sanctions.[3] Haffner testified that the respondent had completed the counseling as ordered by the criminal court, but that the counseling in which she engaged had nothing to do with whether she needed treatment regarding her underlying issues with her children and with the department.

The court also heard testimony from Rodolfo Rosado, a psychologist, and Richard Sadler, a psychiatrist, both of whom had evaluated the respondent.[4] Rosado had recommended that the respondent and her children engage in family therapy. He also recommended individual therapy for the respondent, as well as a full psychiat-

---

[3] The respondent was arrested following a domestic violence episode in which she went to her sister's home, where the children had been staying, and proceeded to break glass throughout the house, destroy a large television set and physically attack her mother, who also was in the home. The respondent's sister called the police, but later opted not to press charges against the respondent. A protective order for the respondent's sister and mother was put in place, and the respondent was ordered to attend anger management therapy.

[4] Rosado evaluated the respondent in 2000, 2001 and in early 2002. Sadler evaluated her on November 6, 2002.

ric examination, in which she steadfastly refused to be involved. Sadler indicated that he believed the respondent has a psychiatric illness, but that the respondent insists that she has no need for treatment and will not engage in treatment. He also testified that the respondent has not shown any indication that she has taken responsibility for the children's removal from her custody.[5]

The testimony of the two evaluators as well as that of the counselor with whom the respondent engaged in anger management therapy provided sufficient evidence from which the court could have found that the respondent had not addressed adequately her psychological and psychiatric issues relating to her difficulty in controlling her anger. We conclude, therefore, that the court's determination that there still exists cause for commitment was not clearly erroneous.

II

The respondent also claims that the court improperly found that further efforts at reunification were not appropriate.[6] Specifically, the respondent claims that the department failed to make reasonable efforts at reunification because it did not offer her services of which she could take advantage. On appeal, we review under the clearly erroneous standard the court's conclusion that further efforts were not appropriate. *In re*

[5] In its response to the respondent's motion for articulation, the court also noted that the respondent had stormed out of the courtroom when the court announced its decision in this case, something that occurred after she had completed the anger management program with Haffner. The court found this behavior strikingly similar to the respondent's behavior when the court, *Owens, J.*, had rendered its decision committing the children to the custody of the commissioner.

[6] The commissioner sought this ruling in conjunction with her request that the court approve the permanency plan to transfer permanent guardianship of the children to their maternal aunt. See General Statutes §§ 46b-129 (k) (2) and 17a-110 (b).

*Jonathan C.*, 86 Conn. App. 169, 179, 860 A.2d 305 (2004).

The respondent has refused to engage in individual therapy numerous times. Most recently, on June 11, 2002, the department furnished the respondent with a list of providers with whom she could begin individual therapy. The department indicated to the respondent that she would be responsible to pay for this therapy. At that time, the respondent did not indicate to the department that she had neither insurance nor the financial wherewithal to afford these services without help from the department. In fact, when the department requested her insurance information, the respondent refused to give the information to the department and insisted that she did not need therapy. The respondent underwent individual therapy and anger management therapy as ordered by the criminal court. Although the department was aware that she had completed this therapy successfully, it did not refer the respondent for further therapy, even though the program she had completed was insufficient for the department's purposes. The department requested that the respondent sign a release of information with regard to her treatment with Haffner, but the respondent refused. The department claimed that because the respondent told Sadler that she did not need therapy in November, 2002, it believed that making a referral for such therapy would be futile.

The department also offered reunification services to the respondent in December, 2002, through a reunification program offered by the Bridgeport Child Guidance Center. Because the respondent lives out of state, the department offered to make this service available to her via an interstate compact agreement, under which the New York agency would enter the respondent's home in order to assess the living conditions. The respondent, however, stated that she would deny

the New York agency entry into her home, a refusal she reiterated at the hearing. The department also offered to conduct a study of the home of the respondent's father, where she stayed intermittently. This effort, however, also was thwarted, as the respondent's father indicated that he did not want employees of the department in his home.

Visitation services also were offered to the respondent by the department. When the respondent indicated that she preferred to have visits in Stamford rather than in Fairfield due to her travel requirements, the department made a referral to a program in Stamford. The respondent was ordered to pay for these visits, but she refused. The department secured funding approval for these supervised visits, but the respondent indicated that she would prefer to continue visiting with the children at the department. When the department suggested to the respondent that she could have visitation outdoors, the respondent refused, stating that she did not want to be seen in public with employees of the department.

On the basis of the evidence adduced at the hearing regarding the services provided by the department to the respondent, the court concluded that "[t]he department has made reasonable efforts to reunify this family and further efforts are not necessary in view of the [respondent's] rock like determination to refuse services." Upon reviewing the record in this case, we conclude that the court had an adequate basis to determine that further efforts by the department were not appropriate.

The judgment is affirmed.

In this opinion the other judges concurred.