IN RE CHRISTOPHER C., JR., ET AL.*
(AC 33751)

DiPentima, C. J., and Espinosa and Pellegrino, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued January 30—officially released March 16, 2012**

*Alison P. Gaston*, with whom was *Erich H. Gaston*, for the appellant (respondent mother).

*Colleen B. Valentine*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, *Benjamin Zivyon*, assistant attorney general, and *Michael Besson*, assistant attorney general, for the appellee (petitioner).

*Michael Maggiacomo*, for the minor children.

*Opinion*

PELLEGRINO, J. The respondent mother appeals from the judgments of the trial court terminating her parental rights with respect to her minor children, Christopher C. and Allyson L.[1] On appeal, the respondent claims that the court erred in finding (1) that the petitioner, the commissioner of children and families, made reasonable efforts to reunify the respondent and

---

** March 16, 2012, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The court's adjudicatory and dispositional orders also named as respondents the fathers of the minor children, but neither is a party to this appeal. Accordingly, we refer to the respondent mother as the respondent. Christopher's father's appeal to this court was released on the same date as this opinion. See *In re Christopher, Jr.*, 134 Conn. App. 464, 39 A.3d 1122 (2012).

the children, (2) that the respondent was unwilling to benefit from reunification efforts and (3) that the respondent failed to achieve sufficient personal rehabilitation.[2] We affirm the judgments of the trial court.

The following facts were found by the court during the adjudicatory phase of the termination proceedings. The respondent has been involved with the department of children and families (department) since she was thirteen years old. As a child, the respondent was exposed to domestic violence, substance abuse and sexual abuse. She was removed from her mother's home and remained in the care of the department until she was eighteen. The respondent has a history of substance abuse, mental health issues and relationships with violent and abusive men.

The respondent met Christopher's father, a registered sex offender, when she was sixteen years old and the father was thirty years old. They were married in May, 2007. Christopher was born on February 29, 2008, when the respondent was nineteen. Christopher's father was verbally and physically abusive toward the respondent. The respondent and the father abused illegal drugs together. They were homeless and transient from December, 2008, to April, 2009, when they separated. The respondent began a relationship with Allyson's father in May, 2009, and thereafter she resided with him. The respondent's relationship with Allyson's father also was characterized by instances of domestic violence and abuse.

The petitioner took custody of Christopher on August 22, 2009, after he was treated at a hospital emergency room for multiple marks and bruises to his face that were consistent with physical abuse. On August 26, 2009, the petitioner filed a neglect petition and order

[2] Pursuant to Practice Book § 67-13 (2), counsel for the minor children filed a statement adopting the brief of the petitioner in this appeal.

of temporary custody on behalf of Christopher, which the court granted.[3] The court adjudicated Christopher a neglected child on May 7, 2010, and committed him to the custody of the petitioner on October 6, 2010.

Allyson was born on April 11, 2010. The petitioner took custody of Allyson on April 16, 2010, when she was five days old, after Allyson was treated at a hospital emergency room for bleeding from her nose and mouth and bruising to her mouth that was consistent with physical abuse. On April 20, 2010, the petitioner filed a neglect petition and order of temporary custody on behalf of Allyson, which the court granted. The court adjudicated Allyson a neglected child and committed her to the custody of the petitioner on August 31, 2010. The children have remained in the custody of the petitioner. Since November, 2010, the children have resided together in a preadoptive foster home.

On November 19, 2010, the petitioner filed petitions to terminate the parental rights of the respondent as to the minor children. On June 9, 2011, after a three day evidentiary hearing, the court rendered judgments in favor of the petitioner. The court found, by clear and convincing evidence, that (1) the department had made reasonable efforts to reunite the respondent and the minor children as required by General Statutes § 17a-112 (j) (1),[4] and (2) the respondent had failed to achieve

[3] The neglect petition was sustained by agreement of the parties. The respondent entered a no contest plea and the father, being noncustodial, stood silent as to the allegations.

[4] General Statutes § 17a-112 (j) (1) provides: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that . . . the [department] has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts, except that such finding is not required if the court has determined at a hearing pursuant to section 17a-111b, or determines at trial on the petition, that such efforts are not required . . . ."

sufficient personal rehabilitation as required by § 17a-112 (j) (3) (B) (ii).[5] This appeal followed. Additional facts will be set forth as necessary.

General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court . . . may grant a petition filed [for termination of parental rights] if it finds by clear and convincing evidence that (1) the [department] has made reasonable efforts to locate the parent and to reunify the child with the parent . . . (2) termination is in the best interest of the child, and (3) . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent . . . and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it

---

[5] General Statutes § 17a-112 (j) (3) (B) (ii) provides: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that . . . the child . . . is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child. . . .

"Our standard of review on appeal from a termination of parental rights is limited to whether the challenged findings are clearly erroneous. . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . [G]reat weight is given to the judgment of the trial court because of [the trial court's] opportunity to observe the parties and the evidence. . . . [An appellate court does] not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Sole S.*, 119 Conn. App. 187, 190–91, 986 A.2d 351 (2010).

I

The respondent claims that the court erred in finding that the department made reasonable efforts to reunify the respondent and the minor children, as required by § 17a-112 (j) (1).[6] We disagree.

"In order to terminate parental rights under § 17a-112 (j), the [department] is required to prove, by clear and convincing evidence, that it has made reasonable efforts . . . to reunify the child with the parent, unless the court finds . . . that the parent is unable or unwilling to benefit from reunification[7]. . . . [Section 17a-112]

---

[6] The respondent also claims that the court erred in finding that she was unwilling to benefit from the department's reunification efforts. As these claims challenge the court's finding with respect to § 17a-112 (j) (1), we consider them together.

[7] The department is not required to provide reasonable efforts to a parent when the parent refuses to participate or engage in any of those efforts. General Statutes § 17a-112 (j) (1); *In re Krystal J.*, 88 Conn. App. 311, 318, 869 A.2d 706 (2005); see also *In re Antony B.*, 54 Conn. App. 463, 476, 735

imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child or children with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible. . . . The trial court's determination of this issue will not be overturned on appeal unless, in light of all of the evidence in the record, it is clearly erroneous." (Internal quotation marks omitted.) *In re G.S.*, 117 Conn. App. 710, 716, 980 A.2d 935, cert. denied, 294 Conn. 919, 984 A.2d 67 (2009).

The court's memorandum of decision describes the department's efforts to reunite the respondent with the children. The petitioner issued specific steps for the respondent to follow in order to regain custody of Christopher on October 6, 2010. In accordance with the specific steps, the respondent participated in Intensive Safety Planning Services through United Community and Family Services in October, 2009, which did not support reunification with Christopher. The department offered domestic violence counseling, which the respondent undertook in 2009, and parenting courses, which the respondent took from September through November, 2009, and then again in January, 2010. From January to April, 2010, the Birth to Three program worked in home with Christopher, the respondent and Allyson's father. Intensive Family Preservation was engaged to assist in reunification. The respondent also participated in the Reconnecting Families program, a six month in-home service provided by the department

---

A.2d 893 (1999) ("[i]t is axiomatic that the law does not require a useless and futile act").

and designed to facilitate successful reunification, beginning in February, 2010.

In April, 2010, at the time of Allyson's birth, the respondent was "within days of a reunification" with Christopher. Reconnecting Families discontinued its work with the respondent only after Allyson was injured and removed from the respondent's custody. The department discontinued its efforts to immediately reunite the respondent with Christopher, but it continued to offer services to the respondent. On April 20, 2010, following Allyson's removal, the petitioner issued specific steps for the respondent to follow in order to regain custody of Allyson. The department offered the respondent referrals to service providers so that she could satisfy the specific steps, but the respondent refused.

The petitioner provided supervised visitation for the respondent with both minor children. The respondent missed numerous visits during April, May, June, July, August, September and October, 2010. From November, 2010, to January, 2011, the respondent did not attend any scheduled visits.[8]

---

[8] The respondent was afforded biweekly supervised visitation with Allyson. Beginning in May, 2010, the respondent was offered once a week supervised visitation for one hour with Allyson and once a week supervised visitation for one hour with both Christopher and Allyson, together. Beginning September 7, 2010, the respondent was offered once a week supervised visitation for one hour with both Christopher and Allyson, together. As of January 4, 2011, the respondent had failed to attend the following scheduled supervised visits:

April 20, 2010 (Allyson);
April 22, 2010 (Allyson);
April 27, 2010 (Allyson);
April 29, 2010 (Allyson);
May 19, 2010 (Allyson);
May 21, 2010 (Christopher and Allyson);
May 26, 2010 (Allyson);
June 2, 2010 (Allyson);
June 9, 2010 (Allyson);
June 23, 2010 (Allyson);
June 25, 2010 (Christopher and Allyson);

The respondent does not dispute the accuracy of these factual findings, but argues that the department failed to make reasonable reunification efforts because it (1) did not offer the respondent assistance in ending her relationship with Allyson's father and (2) "dropped the ball" in terms of engaging the respondent in individual mental health counseling. We are not persuaded.

"[R]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) *In re G.S.*, supra, 117 Conn. App. 716. The specific steps issued on April 20, 2010, required the respondent to take part in individual counseling to address her mental health issues and to participate in domestic violence education. Despite the department's repeated offers of referrals and assistance, the respondent refused to comply.[9] The court found: "The specific

June 30, 2010 (Allyson);

July 7, 2010 (Allyson);

July 14, 2010 (Allyson);

July 21, 2010 (Allyson);

July 30, 2010 (Christopher and Allyson);

August 4, 2010 (Allyson);

August 13, 2010 (Christopher and Allyson);

August 18, 2010 (Allyson);

August 20, 2010 (Christopher and Allyson);

August 27, 2010 (Christopher and Allyson);

September 1, 2010 (Allyson);

September 17, 2010 (Christopher and Allyson);

October 1, 2010 (Christopher and Allyson);

October 15, 2010 (Christopher and Allyson);

October 22, 2010 (Christopher and Allyson);

November 3, 2010 (Christopher and Allyson);

November 10, 2010 (Christopher and Allyson);

November 17, 2010 (Christopher and Allyson); and

December 3, 2010 (Christopher and Allyson).

[9] With respect to the respondent's unwillingness to benefit from the services offered by the department, the court found: "[The respondent] was doing the right things to achieve reunification until Allyson was born and was abused. Whatever courses she had taken, whatever education she had received, appear to have had no benefit to [the respondent]. And, after April of 2010, [the respondent] appears to have lost interest in participation in services."

steps identify individual counseling as necessary, [and state that the respondent is required to] 'make progress on [m]ental [h]ealth issues.' Exhibit FF is a group of letters addressed to [the respondent] which all but beg her to cooperate with the social worker by signing releases necessary to make referrals for required treatment. The letters were all ignored. The one-to-one conversations urging [the respondent] to cooperate, that the social worker had with [the respondent] . . . were ignored."

After careful consideration of the respondent's arguments, the evidence and the court's specific findings of fact, we conclude that the court's findings, that the department made reasonable efforts to reunify the respondent with the children and, further, that the respondent was unwilling to benefit from the department's reunification efforts, are not clearly erroneous.

II

The respondent claims that the court erred in finding that she had failed to achieve such degree of personal

In its articulation, issued July 29, 2011, the court stated: "[The department] was offering the same or similar services as [the respondent] had successfully engaged in the past. The same kind of services that [the respondent] actually participated in before Allyson's injuries. What changed? Not [the department's] manner of doing business. What changed was [the respondent's] unwillingness to participate in the services. . . . The court specifically finds, by clear and convincing evidence, that [the department] made reasonable efforts from the time it became involved with [the respondent] and her children, to reunify them with her. . . . The court specifically finds that [the respondent] did not cooperate with [the department] after the removal of Allyson in April, 2010. [The respondent] was unwilling to cooperate. She had signed the specific steps. She knew from her prior experience with Christopher, what she could do to work with [the department]. After Allyson was removed, she no longer cooperated. She was unwilling to cooperate. She clearly understood what was required for a successful reunification. She had nearly achieved it prior to the birth of Allyson. With or without a lawyer, she was told by the social worker and she knew from the specific steps what was required. She valued her relationship with the abuser over the possibility of reunification with her children. That constitutes an unwillingness on her part."

rehabilitation as would encourage the belief that she could assume a responsible position in the lives of her children within a reasonable period of time, as required by § 17a-112 (j) (3) (B). We disagree.

"Section 17a-112 (c) (3) (B) requires the court to determine whether the degree of personal rehabilitation [achieved by the parent] . . . encourage[s] the belief that within a reasonable time . . . such parent could assume a responsible position in the life of the child . . . . Personal rehabilitation refers to the reasonable foreseeability of the restoration of a parent to his or her former constructive and useful role as a parent, not merely the ability to manage his or her own life. . . . In conducting this inquiry, the trial court must analyze the respondent's rehabilitative status as it relates to the needs of the particular child . . . . The trial court must also determine whether the prospects for rehabilitation can be realized within a reasonable time given the age and needs of the child. . . . [A] trial court's finding that a parent has failed to achieve sufficient rehabilitation will not be overturned unless it is clearly erroneous . . . ." (Citations omitted; internal quotation marks omitted.) *In re Tremaine C.*, 117 Conn. App. 590, 597, 980 A.2d 330, cert. denied, 294 Conn. 920, 984 A.2d 69 (2009).

The court's memorandum of decision describes the respondent's failure to achieve sufficient personal rehabilitation; specifically, the respondent's refusal to obtain mental health and substance abuse treatment and to secure a safe environment for the children. The respondent refused to comply with many, if not all, of the specific steps ordered by the court. The respondent refused to participate in individual counseling to address her mental heath issues and "significant traumatic history." She missed and cancelled appointments to participate in substance abuse evaluation, was unsuccessfully discharged from a substance abuse treatment

program and refused to submit to random drug testing. She did not cooperate with home visits and refused, on multiple occasions, to permit social workers to inspect the apartment she shared with Allyson's father. She moved and did not advise the department of her change of address. She did not attend scheduled visits with the children.

The respondent argues that the court's finding that she had not achieved sufficient rehabilitation was in error because (1) it was premised on the respondent's failure to end her relationship with Allyson's father, which was not required by the specific steps, and (2) the court gave undue weight to the respondent's refusal to participate in individual counseling and substance abuse treatment.[10] We are not persuaded.

The respondent has a history of severe and long-standing mental health and substance abuse issues and involvement with violent and abusive men. The record reveals that the respondent's unwillingness to leave Allyson's father, a man who was abusive toward her and was suspected of inflicting the injuries to the children that resulted their removal by the petitioner, was inextricably linked to the respondent's unresolved mental health issues. The court found: "[The respondent] is a woman with monumental mental health needs. Her whole life has been affected by sexual predators and abusive relationships. She desperately needs mental health counseling." Considering the respondent's refusal to comply with the specific steps, the court

[10] The respondent also claims that the court was inconsistent in its consideration of the events that occurred after the termination petitions were filed. We note that "[i]n making its determination, the court may rely on events occurring after the date of the filing of the petition to terminate parental rights when considering the issue of whether the degree of rehabilitation is sufficient to foresee that the parent may resume a useful role in the child's life within a reasonable time"; (internal quotation marks omitted) *In re Sole S.*, supra, 119 Conn. App. 192 n.8; and conclude that the respondent's claim is without merit.

stated: "Perhaps most troubling is that [the respondent] has never engaged in individual counseling to deal with her significant traumatic history. She selects significantly disturbed mates. She has forsaken her children for a very ill man [Allyson's father]. There certainly are issues of profound dependence. Her relationships have been characterized by control, violence and instability. The specific steps identify individual counseling as necessary, [and state that the respondent is required to] 'make progress on [m]ental [h]ealth issues.' "

The court concluded: "The court finds that whatever the problems are with respect to [the respondent's] inability to protect her children and keep them safe from abuse, those problems remain unresolved and have not been addressed. A paramount concern of the court is the safety of the children. [The respondent] has done nothing to enable her to protect her children. The court finds by clear and convincing evidence that she has failed to rehabilitate." In its articulation, the court found: "There is nothing in the record to suggest that whatever caused her to stay with the abuser [Allyson's father] has been addressed in treatment and therapy."

After careful consideration of the respondent's arguments, the evidence and the court's specific findings of fact, we conclude that the court's finding that the respondent failed to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable time and considering the age and needs of the minor children, she could assume a responsible position in their lives is not clearly erroneous.

The judgments are affirmed.

In this opinion the other judges concurred.