******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE NAVAEH W. ET AL.*
(AC 36596)

DiPentima, C. J., and Sheldon and Sullivan, Js.

*Argued September 11—officially released November 24, 2014***

(Appeal from Superior Court, judicial district of New
Haven, Juvenile Matters, Cronan, J.)

*Erich H. Gaston*, with whom, on the brief, was *Alison P. Gaston*, for the appellant (respondent mother).

*Renee Bevacqua Bollier*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Opinion*

SHELDON, J. In this appeal from the judgments of the trial court terminating the parental rights of the respondent mother[1] as to her two minor daughters, Nevaeh W., age six, and Janiyah A., age four, the respondent raises three claims of error. With respect to the adjudicatory phase of the termination proceeding, the respondent claims that the trial court erred in finding: (1) that the Department of Children and Families (department) made reasonable efforts to reunify her with her children; and (2) that she had failed to achieve the degree of personal rehabilitation that would encourage the belief that within a reasonable time, considering the age and needs of her daughters, she could assume a responsible position in their lives. With respect to the dispositional phase of the termination proceeding, the respondent claims deficiencies in the process by which the trial court determined that termination of her parental rights is in the best interests of her two children. Specifically, she asserts that the trial court based its best interests determination solely upon its findings as to the children's positive relationship with and likely future adoption by their preadoptive foster parents, without considering or making written findings as to the children's relationship with her, as expressly required by General Statutes § 17a-112 (k) (4). We reject the respondent's claims of error as to the court's adjudicatory findings; however, we conclude that the court failed to meet the minimum statutory requirements governing the dispositional phase of the proceedings, and, therefore, we reverse in part the judgments of the trial court.

The respondent gave birth to her daughter, Nevaeh, in July, 2008. Shortly thereafter, on September 4, 2008, the petitioner, the Commissioner of Children and Families, invoked an administrative ninety-six hour hold as to Navaeh due to the respondent's alleged "substance abuse, unaddressed mental health issues and unstable housing." An order of temporary custody subsequently was issued on September 8, 2008, and sustained on October 23, 2008. The respondent later engaged in substance abuse treatment at Coventry House, an inpatient facility, where Nevaeh was returned to her care and custody under an order of protective supervision on January 8, 2009. On April 3, 2009, the petitioner invoked a second ninety-six hour hold as to Navaeh after the respondent was discharged from Coventry House for noncompliance with program rules.

In March, 2010, after Nevaeh's recommitment to the petitioner, the respondent gave birth to Janiyah. Several months after Janiyah's birth, in January, 2011, Nevaeh's commitment was revoked and she was reunited with the respondent under an order of protective supervision. On July 2, 2012, the respondent was arrested,[2] whereupon an order of temporary custody was granted

by the court as to both children. The July 2, 2012 removal was Nevaeh's third removal and Janiyah's first removal from the respondent. On October 24, 2012, both children were adjudicated neglected and committed to the care and custody of the petitioner. On November 30, 2012, the children were placed in a preadoptive home that had previously served as a placement for Nevaeh in 2009 and 2010.

On February 22, 2013, the petitioner filed termination petitions with respect to the two children, alleging that the respondent's parental rights should be terminated on the grounds that she had failed to rehabilitate, and that she had abandoned the children. A joint trial on the two petitions took place over two days, commencing on October 15, 2013, and ending on November 20, 2013. The respondent was represented at the trial by counsel, as were the children.[3] The petitioner called four witnesses to testify in support of the petitions for termination, and the respondent called two witnesses to testify on her behalf. Thereafter, on January 27, 2014, the trial court, *Cronan*, *J.*, rendered its decision. In a seven page memorandum of decision, the court granted both petitions on the grounds that the respondent had failed to achieve a sufficient degree of personal rehabilitation to encourage the belief that within a reasonable time, considering the age and needs of her daughters, she could assume a responsible position in their lives, and that termination of her parental rights was in the best interests of her children. Thereafter, the respondent filed the present appeal. Additional facts will be set forth as necessary to review the respondent's claims.

I

The respondent claims initially that the court made clearly erroneous factual findings in the adjudicatory phase of the termination proceeding. Specifically, she claims that the court erred in finding by clear and convincing evidence: (1) that the department had made reasonable efforts to reunify her with her children; and (2) that she had failed to achieve a sufficient degree of personal rehabilitation to satisfy the requirements of § 17a-112 (j) (3) (B) (i). We disagree.

"Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Internal quotation marks omitted.) *In re Aziza S.-B.*, 138 Conn. App. 639, 657, 53 A.3d 1001 (2012). "[G]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence." (Internal quotation marks omitted.) *In re Davonta V.*, 285 Conn. 483, 488, 940 A.2d 733 (2008). "We do not examine the record to determine whether

the trier of fact could have reached a conclusion other than the one reached. . . . [O]n review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Jordan T.*, 119 Conn. App. 748, 755, 990 A.2d 346, cert. denied, 296 Conn. 905, 992 A.2d 329 (2010).

"The legal framework for deciding termination petitions is well established. [A] hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the dispositional phase. During the adjudicatory phase, the trial court must determine whether one or more of the . . . grounds for termination of parental rights set forth in § 17a-112 [j] exists by clear and convincing evidence. . . . If the trial court determines that a statutory ground for termination exists, then it proceeds to the dispositional phase. During the dispositional phase, the trial court must determine whether termination is in the best interests of the child. . . . The best interest determination also must be supported by clear and convincing evidence." (Citations omitted; footnotes omitted; internal quotations marks omitted.) *In re Davonta V.*, supra, 285 Conn. 487–88; see also General Statutes § 17a-112 (k).

A

Reunification Efforts

The respondent first claims that the court erred in finding that the petitioner proved by clear and convincing evidence that the department had made reasonable efforts to reunify her with her children, as required by § 17a-112 (j) (1).

As a preliminary matter, § 17a-112 (j) (1) requires the court to make a finding as a prerequisite to terminating parental rights that the department has made reasonable efforts to reunify the child with the parent. "The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) *In re Tabitha T.*, 51 Conn. App. 595, 600, 722 A.2d 1232 (1999). "[R]easonableness is an objective standard . . . and whether reasonable efforts have been proven depends on the careful consideration of the circumstances of each individual case." (Internal quotation marks omitted.) *In re Ebony H.*, 68 Conn. App. 342, 349, 789 A.2d 1158 (2002).

In making its determination that reasonable efforts had been made in this case, the court found the following. "[The department] has provided numerous opportunities to [the respondent] for treatment of her substances and mental health problems that would

result in reunification. . . . She has not been able to establish a track record of successfully completing these programs and gaining the stability necessary to raise two young girls." In support of its conclusion, the court cited a number of treatment programs that the respondent had started but failed to complete.[4]

The respondent argues that, contrary to the court's conclusions, the evidence shows that the department had "written her off" based upon her prior unsuccessful attempts to complete treatment, as a result of which it had allegedly chosen not to provide her with additional services. In addition, she claims that the evidence shows that she had made a "substantial step" prior to the termination proceedings, in that she had voluntarily sought treatment for her alcohol abuse and achieved sobriety. Accordingly, she argues, the department had an obligation to reengage with her and provide her additional services aimed at reunification as well as to afford her additional opportunities for visitation with her children.

In support of her argument, the respondent directs our attention to *In re Vincent B.*, 73 Conn. App. 637, 645, 809 A.2d 1119 (2002), cert. denied, 262 Conn. 934, 814 A.2d 136 (2003), in which this court reversed an order terminating a father's parental rights because the department had made "no efforts at reunification at all." In *In re Vincent B.*, the respondent father had a lengthy history with the department as a result of previous termination petitions that had been filed with respect to his other children. Id., 642. Based upon the father's previous failure to avail himself of services, the department concluded that he would be similarly unwilling or unable to benefit from efforts at reunification with his child, Vincent. Id. Accordingly, the department did not contact the father or offer him any services prior to seeking termination of his parental rights. Id., 643. In reversing the termination order, this court held that the department's decision to make "no efforts" to reunify the father with his son was not reasonable. Id., 645. This court also noted that there was evidence in the record that the father had undergone substance abuse treatment and was sober and, thus, it was likely that he would benefit from reunification services. Id., 646.

There are important differences between *In re Vincent B.* and the present case. First and foremost, in this case there is no evidence that the department ever denied the respondent services; in fact, there is evidence that the department made repeated efforts to provide the respondent with inpatient and outpatient substance abuse treatment and counseling. The respondent concedes that referrals for such services were indeed made, but claims that these services were inadequate to assist her because they were not tailored to meet her individual needs. She argues, inter alia, that

the department had "committed to terminating [her] parental rights to the children," and thus was not "even going through the motions" of helping her to pursue reunification. We disagree.

The record indicates that the department began offering the respondent services shortly after Nevaeh's birth in 2008. These services were designed to help the respondent address the problems that interfered with her ability to parent Navaeh, particularly her alcohol abuse and mental health issues. In addition, the respondent was provided with supportive housing. The record shows that on two occasions when the respondent successfully completed programs in 2009 and 2011, she was reunified with Nevaeh. The department made similar efforts to provide appropriate services to the respondent after the children came into the custody of the petitioner in July, 2012. Joel Pullen, a department social worker, testified as to the department's efforts at reunification prior to trial, which included a referral to the Fresh Start program in Hartford. The respondent did not complete the Fresh Start program, and the department subsequently made a referral to the APT Foundation. In sum, the record reflects that this is not a case where the department made no efforts at reunification at all. See *In re Vincent B.*, supra, 73 Conn. App. 645.

Another important distinction between the present case and *In re Vincent B.* is that here there is evidence that the respondent herself undermined the department's efforts to facilitate reunification with her children. Pullen testified that in November, 2012, he informed the respondent that the department intended to place the children with the foster family that had previously served as a placement for Nevaeh in 2009 and 2010. The respondent, who reportedly had a difficult relationship with the foster family, was not in agreement with that plan. According to Pullen's testimony, "[she] made it very clear to me, to my supervisor, to my program manager that she was very disgusted with the plan for her child to be placed in the foster home and she [did not] want anything to do with the [department's case], the involvement of her daughters or any further visits." The respondent subsequently withdrew from her inpatient substance abuse treatment program without providing a forwarding address to the department. The respondent did not resurface until February, 2013.

As previously noted, in assessing the department's reunification efforts, "[t]he word *reasonable* is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged . . . ." (Emphasis added; internal quotation marks omitted.) *In re Tabitha T.*, supra, 51 Conn. App. 600. It is well established that "[t]he department is not required to provide reasonable efforts to a parent when the parent refuses to participate or engage in any of those efforts.

. . . [I]t is axiomatic that the law does not require a useless and futile act." (Citations omitted; internal quotation marks omitted.) *In re Christopher C.*, 134 Conn. App. 473, 478–79 n.7, 39 A.3d 1127 (2012); see also *In re Kyara H.*, 147 Conn. App. 855, 874, 83 A.3d 1264 (trial court's determination that department made reasonable efforts to facilitate reunification could reasonably be assessed in light of respondent's lack of interest in cooperating with such efforts), cert. denied, 311 Conn. 923, 86 A.3d 468 (2014). In finding that the department had made reasonable efforts to reunify the respondent and her children, the court cited the respondent's poor "track record" as a barrier to reunification. The court's subsequent adjudicatory findings likewise stated that the respondent had been "inconsistent in seeking and successfully completing programs that would address her ongoing needs . . . ." Given the evidence and the court's resulting findings, the record reasonably supports the inference that the court factored the respondent's lack of cooperation into its reasonable efforts determination.

The trial court's determination of this issue will not be overturned on appeal unless, in light of all of the evidence in the record, it is clearly erroneous. *In re Destiny R.*, supra, 134 Conn. App. 628–29. In light of the evidence that was presented at trial, the court reasonably concluded that the department made reasonable efforts to reunify the respondent with her children.

B

Rehabilitation

The respondent next claims that the court erred in finding, by clear and convincing evidence, that she had failed to rehabilitate to the degree required by § 17a-112 (j) (3) (B) (i). The respondent argues that the court's finding as to rehabilitation was clearly erroneous, in that the court placed inappropriate emphasis on her prior relapses and substance abuse, while disregarding evidence of her improved circumstances and sobriety at the time of trial. The petitioner maintains that the evidence suggested that the respondent needed "to show at least a year of sobriety [and] stable housing before reunification could be considered," and thus the court properly found that she was not in a position to assume parental responsibility for her children.[5] On the basis of our review of the record, we agree that there was factual support for the court's determination, and thus reject the respondent's claim.

Failure to rehabilitate is one of the statutory grounds for termination of parental rights under § 17a-112 (j).[6] "Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [The statute] requires the trial court to analyze the [respondent's] rehabilitative status as it relates to the needs of the

particular child, and further, that such rehabilitation must be foreseeable within a reasonable time." (Internal quotation marks omitted.) *In re Eden F.*, 250 Conn. 674, 706, 741 A.2d 873, reargument denied, 251 Conn. 924, 742 A.2d 364 (1999).

In assessing whether a parent can achieve personal rehabilitation within a reasonable time frame, the trial court is accorded substantial deference. "We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [O]n review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Jordan T.*, supra, 119 Conn. App. 755.

In this case, the court heard testimony, reviewed the psychological evaluation and the social study, and found by clear and convincing evidence that the respondent had failed to rehabilitate to the degree required by § 17a-112 (j) (3) (B) (i). Specifically, the court found that the respondent had "failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, she could assume a responsible position in the lives of the children, in that she has been inconsistent in seeking and successfully completing programs that would address her ongoing needs and ensure a stable home and life experience for her children." Against this background, the court concluded that the respondent had "not been able to establish a track record of successfully completing these programs and gaining the stability needed to raise two young girls."

Ines Schroeder, a court-appointed psychologist who evaluated the respondent's case in October, 2012, and August, 2013, testified to her observations and conclusions at trial. In Schroeder's initial assessment, dated October 15, 2012, she was unable to provide a recommendation as to whether reunification was advisable. Instead, she directed the court's attention to several factors both in favor of reunification and against it. Later, however, in her updated evaluation, dated August 12, 2013, Schroeder advised against further efforts at reunification. Schroeder concluded, upon further evaluation after interviewing the respondent a second time, that the respondent would need "at least a year to show stability in her sobriety and mental health treatment as well as to show consistency in her employment and living arrangements."

Schroeder thus opined that, although the respondent was making progress with her problems with alcohol and in securing employment, she would need additional time to address her mental health problems, so as to reduce the likelihood of future relapses. Schroeder further testified that she had gathered additional information regarding the circumstances of the children, and

upon that basis, she concluded that it would not be beneficial for the children to wait longer for the respondent to stabilize.[7]

Testimony by the respondent's witnesses also suggested she would benefit from continued treatment. Nora Cleary, the respondent's case manager at the Elm City Women and Children Center in New Haven, testified that the respondent had been receiving inpatient treatment under her supervision at the center for approximately three months prior to trial, and that she appeared to be doing well. Cleary testified, however, that although the respondent had been following the center's rules and had not relapsed, she continued to suffer from depression. Cleary attributed the respondent's depression, in part, to the turmoil associated with the loss of her children. Cleary testified that the respondent would benefit from additional time at the center to continue working through her issues. She based this conclusion on her individual assessment of the respondent, as well as on her general understanding that the "more sober time that people have under their belt the better."

On appeal, the respondent directs our attention to the testimony of Schroeder and Cleary, arguing that such evidence indicated that, by the time of trial, she had sought treatment to control her alcohol abuse and had made significant progress toward rehabilitation. In addition, she argues that the court failed to make specific findings as to her past participation in various programs or as to what she claims to have been her valid reasons for failing to complete those programs. In essence, the respondent argues that the court disregarded or undervalued evidence she deems significant, while relying on other evidence to reach its conclusion.

"Our function as an appellate court is to review and not retry the proceeding . . . . The probative force of conflicting evidence is for the trier to determine." (Internal quotation marks omitted.) *In re Victoria B.*, 79 Conn. App. 245, 262, 829 A.2d 855 (2003). There was evidence presented to the court that suggested that the respondent has made unsuccessful attempts to control her alcohol abuse and that problems stemming from alcohol abuse had thwarted her efforts to reunite with her children and live a productive life. Although there was evidence that the respondent had made progress at the time of trial, there was also evidence that she would need additional time to attain stability in her sobriety and her mental health treatment. In light of such evidence, the court found that the respondent's problems were "ongoing" and that she was unable to provide necessary care for her children.

The respondent argues that rehabilitation does not require a parent to assume full responsibility for a child, without the aid of available support systems. See *In re Migdalia M.*, 6 Conn. App. 194, 203, 504 A.2d 533, cert.

denied, 199 Conn. 809, 508 A.2d 770 (1986). While we agree that the standard is not full rehabilitation, the parent must demonstrate more than some rehabilitation. *In re Victoria B.*, supra, 79 Conn. App. 254. Moreover, "[i]n assessing rehabilitation, the critical issue is not whether the parent has improved [her] ability to manage [her] own life, but rather whether [she] has gained the ability to care for the particular needs of the [children] at issue." (Internal quotation marks omitted.) Id., 255. Although there was evidence before the court that the respondent had made efforts to achieve personal stability, the court had reasonable concerns that her degree of rehabilitation was not such that she would be able to assume the care of her children and address their needs within a reasonable time.

The respondent also argues that alcohol abuse, "standing alone," does not support termination of parental rights on lack of rehabilitation grounds. Even assuming that that is true, the evidence before the court suggested that the respondent had been struggling with several issues—her mental health, abuse of alcohol, and lack of proper housing. The court found that the respondent had been inconsistent in addressing "her ongoing needs." Thus, the respondent's argument, that alcohol abuse was the sole basis for the court's finding of failure to rehabilitate, is unfounded.

We conclude that the evidence at trial was sufficient to support the court's finding that despite the respondent's ongoing participation in several treatment programs, she had failed to achieve the degree of stability necessary to assume parental responsibility for her children.

II

The respondent next claims error in the dispositional phase of the challenged proceeding on the basis of alleged deficiencies in the court's determination that termination of her parental rights was in the best interests of her two children. The court's determination, she asserts, was based solely upon its finding under § 17a-112 (k) (4) concerning the children's positive relationship with and likely future adoption by their preadoptive foster parents, without considering or making written findings as to the children's feelings and emotional ties with respect to her, as expressly required by that same statutory subsection. The petitioner acknowledges that the court did not make an express finding as to either child's feelings and emotional ties with respect to the respondent, but nonetheless argues that the court's memorandum of decision reflects that it "implicitly" considered the parent-child relationship. We agree with the respondent that the trial court's findings were legally deficient because they failed to meet the mandatory requirements of § 17a-112 (k) (4).[8]

We begin by setting forth the appropriate standard

of review and the applicable legal principles. To review the respondent's claim we must determine whether the court correctly applied the law, and therefore our review is plenary. See *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 152–53, 662 A.2d 718 (1995) (mixed questions of fact and law, which require application of legal standard to fact determinations, require plenary review); see also *State* v. *Pare*, 253 Conn. 611, 621–22, 755 A.2d 180 (2000) (court's failure to follow mandatory statutory provisions raises question of law, and thus review is plenary).

In seeking termination of parental rights, the petitioner has the burden of proving, by clear and convincing evidence, both that statutory grounds for termination exist and that termination is in the best interests of the child. *In re Juvenile Appeal* (*Anonymous*), 177 Conn. 648, 675–76, 420 A.2d 875 (1979); *In re Sheena I.*, 63 Conn. App. 713, 725, 778 A.2d 997 (2001); see also General Statutes § 17a-112 (j). "After an adjudicatory determination that a ground for the termination of parental rights has been established, § 17a-112 [k][9] *requires the trial court to make dispositional findings on each of [seven] enumerated criteria to assure that termination is in the best interest of the child.*" (Emphasis added; footnote altered.) *In re Romance M.*, 229 Conn. 345, 354–55, 641 A.2d 378 (1994); see also *In re Victoria B.*, supra, 79 Conn. App. 258; *In re Jonathon G.*, 63 Conn. App. 516, 528, 777 A.2d 695 (2001).

Although neither the statute nor the case law interpreting it expressly requires the trial court to rely upon its mandatory findings as to any particular factor or factors as the explicit basis for its ultimate decision whether to terminate parental rights; *In re Eden F.*, supra, 250 Conn. 687–95; both the statute and controlling case law make it clear that the trial court has a mandatory obligation to consider and make written findings as to all such factors in the course of making that ultimate decision.[10]

Relevant to the respondent's claim in this case is § 17a-112 (k) (4), which provides that the court "shall consider and shall make written findings regarding . . . the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties . . . ." The respondent argues that the court's findings do not comply with § 17a-112 (k) (4) because they fail to address the children's feelings and emotional ties with respect to her. Instead, she asserts, in considering subdivision (4), the court focused exclusively on the children's relationship with and prospective adoption by the preadoptive foster parents. We agree with the respondent.

Here, before reaching its ultimate conclusion as to the children's best interests, the court correctly listed the seven statutory factors set forth in § 17a-112 (k) and made brief findings as to limited aspects of each such factor. As to the fourth factor, § 17a-112 (k) (4), the court's entire finding was stated as follows: "[B]oth children have been placed together with a preadoptive resource who has expressed a willingness to adopt both girls. They are comfortable, secure and safe." This finding, so articulated, is utterly unresponsive to the mandatory statutory requirement that the court consider and make written findings as to "the feelings and emotional ties of the child with respect to the child's parents . . . ." General Statutes § 17a-112 (k) (4).

We are mindful, of course, that the court's memorandum of decision must be read and considered in its entirety. See *In re Halle T.*, 96 Conn. App. 815, 839–42, 902 A.2d 670 (court considered respondent's care for child and efforts at rehabilitation and found termination was in child's best interests), cert. denied, 280 Conn. 924, 908 A.2d 1087 (2006); *In re Aziza S.-B.*, supra, 138 Conn. App. 655–59 (court did not fail to consider parent-child relationship). Here, however, the court's abbreviated decision contains no reference at all, either express or implied, to the children's feelings or emotional ties with respect to the respondent.[11] The petitioner argues that such consideration is evidenced by the court's reference in its decision to Nevaeh's commitments in 2008, 2009, and 2012.[12] The court's adjudicatory finding with respect to Nevaeh's previous removals from the respondent, however, is utterly silent as to Nevaeh's feelings or emotional ties with respect to the respondent. Furthermore, of course, the court's fleeting reference to Nevaeh's commitments sheds absolutely no light on the feelings and emotional ties of Janiyah with respect to the respondent.[13]

The trial court's decision, read in its totality, simply contains no finding at all concerning the feelings and emotional ties of either child with respect to the respondent, and thus gives no evidence that the court considered that critical issue, as the law required it to, in making the delicate, life-altering determination that termination of the respondent's parental rights was in the children's best interests. In the absence of such consideration and related findings, the court was not empowered to reach, much less to decide, whether it was in the best interests of the children to terminate the respondent's parental rights. See General Statutes § 17a-112. Because the court failed to make the mandatory statutory findings, we conclude that the court's best interests determination must be reversed.

The judgments are reversed in part and the case is remanded for further proceedings before a different judicial authority on the dispositional phase of the termination proceeding. The judgments are affirmed in all

other respects.

In this opinion the other judges concurred.

\* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

\*\* November 24, 2014, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The petitioner also petitioned for and was granted termination of the parental rights of the fathers of the two children. Neither of the fathers has appealed the trial court's decision and therefore, the facts relating to termination of their rights are not addressed in this opinion. We refer in this opinion to the respondent mother as the respondent.

[2] The record indicates that the respondent was arrested for interfering with an officer and failure to appear.

[3] Counsel for the children adopted the petitioner's brief on appeal.

[4] The respondent had previously sought treatment at the New Life Center, the Fresh Start Program and Coventry House, and was currently engaged in treatment at the Elm City Center at the time of trial.

[5] The petitioner also argues that the evidence in the record suggests that as of the date the termination petition was filed in February, 2013, the respondent had failed to maintain her sobriety. "In the adjudicatory phase, the court may rely on events occurring after the date of the filing of the petition to terminate parental rights when considering the issue of whether the degree of rehabilitation is sufficient to foresee that the parent may resume a useful role in the child's life within a reasonable time." (Emphasis omitted; internal quotation marks omitted.) *In re Jennifer W.*, 75 Conn. App. 485, 495, 816 A.2d 697, cert. denied, 263 Conn. 917, 821 A.2d 770 (2003). Here, the court's adjudicatory determination is premised on the respondent's failure to attain "*such a degree of personal rehabilitation*" as is necessary to assume a responsible position in the lives of her children.

[6] General Statutes § 17a-112 (j) provides: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts, except that such finding is not required if the court has determined at a hearing pursuant to section 17a-111b, or determines at trial on the petition, that such efforts are not required, (2) termination is in the best interest of the child, and (3) (A) the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding, or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child."

[7] Schroeder's evaluation indicates that she conducted interviews with the children's foster parents and had telephone contact with Nevaeh's therapist. "[N]either of the children was seen individually to discuss their memories [of the respondent];" however, Schroeder did observe the respondent and Janiyah interact in a parent-child session scheduled for that purpose.

[8] Additionally, the respondent alleges error in the court's determination as to timely and reasonable efforts under subdivisions (k) (1) and (2) of § 17a-112 respectively. Because we decide the court erred in failing to make a finding under § 17a-112 (k) (4), we do not reach the respondent's additional claims.

[9] General Statutes § 17a-112 (k) provides that in nonconsensual termination cases, "the court *shall consider and shall make written findings* regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children

and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980,1 as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent." (Emphasis added.)

[10] In contrast, no such statutory requirement exists in a consensual termination. Cf. *In re Bruce R.*, 234 Conn. 194, 201–208, 662 A.2d 107 (1995) (contrasting best interests determination in nonconsensual and consensual terminations under General Statutes § 45a-717). The court's best interests determination in a nonconsensual termination requires consideration of all statutorily delineated factors because there, unlike in a consensual termination, the parent's constitutionally protected interest in maintaining a relationship with her child is at stake.

[11] Further underscoring the court's failure to consider the parent-child bond, as required under the statute, is the court's singular focus on the proposed future placement of the children with the foster family. In its truncated "Best Interests" subsection of its decision, following its statutory findings, the court stated: "The children have done well in their foster home. The foster parents wish to adopt the children and the children are closely attached to them as well as an older 'sister' who, herself, is a product of the foster system and aids in the care and nurturing of the children. The children have been in a stable and nurturing environment with caregivers who wish to have the children permanently."

[12] Interestingly, with respect to the respondent's argument that the court improperly considered and gave undue weight to the children's relationship with the foster parents, the petitioner argues that § 17a-112 (k) (4) "*require*[*d*] the court to consider in the dispositional phase *and make written findings* regarding the feelings and emotional ties of the child" with respect to the foster parents.

[13] Our review of the record conveys that there was evidence before the court that Janiyah had an emotional bond with the respondent. Counsel for the respondent highlighted this evidence for the court in closing argument: "Again, Janiyah has been known to have a bond with [the respondent] because her case hasn't been going on anywhere near as long as Nevaeh's [has]. And I believe it's Janiyah's first time down, not the third or fourth. So I think there's an attempt to have a package deal, and children should be judged separately. And I am not hearing from the testimony we have that Janiyah's having anywhere near the level of problems that Nevaeh has. So, especially in regards to Janiyah, I don't think the best interests have been met. The child could easily be returned to [her] now. . . . [The respondent has] made great strides . . . ."

_____