******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

## IN RE BROOKLYN O.*
### (AC 43360)

Lavine, Devlin and Sheldon, Js.

*Syllabus*

The respondent father appealed to this court from the judgment of the trial court denying his motion to revoke the commitment of his minor child to the custody of the petitioner, the Commissioner of Children and Families. The minor child had previously been adjudicated neglected and had been committed to the custody of the petitioner. The father claimed that the trial court improperly found that he failed to prove that commitment of the minor child was no longer warranted. *Held* that the trial court properly denied the respondent father's motion to revoke commitment, the father having failed to claim that the trial court's decision was not legally and logically correct, and, in fact, the father's brief was devoid of any legal analysis; moreover, although the father asked this court to adopt an alternative view of the evidence presented to the trial court that was favorable to him, that is not the role of this court, the trial court considered the evidence, including seventeen exhibits that were admitted into evidence and the testimony of several witnesses, and, on the basis of that evidence, determined that the father failed to meet his burden of proving that the cause for commitment of the minor child no longer existed, and this court, on the record before it, could not conclude otherwise.

Argued February 28—officially released March 19, 2020**

*Procedural History*

Petition by the Commissioner of Children and Families to adjudicate the minor child neglected, brought to the Superior Court in the judicial district of Fairfield, Juvenile Matters at Bridgeport, where the court, *Ginocchio, J.*, adjudicated the minor child neglected and committed the minor child to the custody of the petitioner; thereafter, the case was transferred to the judicial district of Middlesex, Child Protection Session at Middletown, where the court, *Burgdorff, J.*, denied the respondent father's motion to revoke commitment, and the respondent father appealed to this court. *Affirmed*.

*Raymond O.*, self-represented, the appellant (respondent father).

*Benjamin Zivyon*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (petitioner).

*Opinion*

PER CURIAM. The respondent father appeals from the judgment of the trial court denying his motion to revoke the commitment of the minor child, Brooklyn O., to the custody of the petitioner, the Commissioner of Children and Families (the commissioner).[1] On appeal, the respondent contends that the court erred in finding that he failed to prove that commitment of the minor child was no longer warranted. We affirm the judgment of the trial court.

The trial court set forth the following relevant procedural and factual history. "[O]n May 26, 2016, [the petitioner] invoked a [ninety-six] hour hold on behalf of [the minor child]. A petition of neglect and a motion for order of temporary custody (OTC) was filed by [the petitioner] on May 27, 2016. The OTC was denied on May 27, 2016. A second OTC was filed on June 2, 2016, and granted by the court. On June 8, 2016, the OTC was sustained by agreement of the parties. [The minor child] was adjudicated neglected and committed to the care and custody of [the petitioner], and was placed with [her] mother at a rehabilitation facility. Specific steps were ordered by the court, including orders that [the] mother remain compliant with the program and her specific steps. On January 8, 2016, a motion to open and change disposition to commitment with protective supervision with [the] mother was granted. The protective supervision expired on August 8, 2017. A third OTC and a second neglect petition was filed on August 10, 2017, due to [the] mother testing positive for cocaine and oxycodone in addition to [the] mother's reports of [the respondent's] controlling and coercive behaviors. The OTC was vacated by the court on August 29, 2017, and [the minor child] was returned to [the] mother's care. . . . On November 26, 2017, [the respondent] reported . . . that [the] mother was under the influence of drugs, along with her boyfriend, in [the minor child's] presence. [The respondent] did not return [the minor child] to [the] mother after a visit. [The mother] tested positive for amphetamines on November 15, 2017. [The respondent] was ordered by the court to return [the minor child] to [the Department of Children and Families' (department)]] office on December 1, 2017, due to a violation of the visitation order. On December 1, 2017, [the petitioner] invoked an administrative hold on the basis that returning her to mother's care would be unsafe. A fourth OTC was filed on December 4, 2017, and consolidated with the trial on the pending neglect petition. On April 5, 2018, the court . . . issued a written decision adjudicating the minor child . . . neglected on the grounds that she [was] being denied proper care and attention, physically, educationally, emotionally or morally; or she [was] being permitted to live under conditions injurious, circumstances or associations injurious to her well-being."

"[The respondent] filed a motion to revoke [the] commitment on June 19, 2018. A motion for contempt filed by the [respondent] on February 6, 2019, was ordered consolidated with the motion to revoke by the court . . . on March 18, 2019."

Following a six day trial, at which the respondent represented himself,[2] the court denied the respondent's motion to revoke the commitment.[3] In denying the respondent's motion to revoke the commitment, the court noted that "[his] issues at the time of the neglect adjudication on April 5, 2018 were his unstable mental health concerns, history of domestic violence, ongoing anger issues and his impulsive and manipulating behaviors. He also presented with an inability to maintain boundaries with the service providers." The court found, inter alia, that, since April 5, 2018, the respondent had "demonstrated an unwillingness or inability to benefit from reunification efforts" and had not been fully compliant with his court-ordered specific steps. The court determined that the respondent "continues to present with the same concerns of manipulations, anger, unstable and controlling behaviors that existed prior to the adjudication date." The court concluded that the respondent had not proved by a fair preponderance of the evidence that the initial cause for commitment no longer exists. The court reasoned: "Specifically, [the respondent's] ongoing anger issues and threatening behaviors cause this court serious concern. This conduct also presents a potentially dangerous situation for [the minor child], both physically and emotionally. [The respondent] continues to demonstrate a lack of parenting skills including effective discipline and appropriate interaction with [the minor child]. The credible evidence illustrates that [the respondent] does not comprehend the gravity of his conduct and its adverse effect on [the minor child]. Therefore, the court cannot presently find that [the respondent] has achieved the degree of personal rehabilitation that would warrant revocation of [the minor child's] commitment."[4] This appeal followed.

"A motion to revoke commitment is governed by [General Statutes] § 46b-129 (m) and Practice Book § 35a-14A. Section 46b-129 (m) provides: 'The commissioner, a parent or the child's attorney may file a motion to revoke a commitment, and, upon finding that cause for commitment no longer exists, and that such revocation is in the best interests of such child or youth, the court may revoke the commitment of such child or youth. No such motion shall be filed more often than once every six months.'

Practice Book § 35a-14A provides in relevant part: "Where a child or youth is committed to the custody of the [c]ommissioner . . . the commissioner, a parent or the child's attorney may file a motion seeking revocation of commitment. The judicial authority may revoke

commitment if a cause for commitment no longer exists and it is in the best interests of the child or youth. Whether to revoke the commitment is a dispositional question, based on the prior adjudication, and the judicial authority shall determine whether to revoke the commitment upon a fair preponderance of the evidence. The party seeking revocation of commitment has the burden of proof that no cause for commitment exists. If the burden is met, the party opposing the revocation has the burden of proof that revocation would not be in the best interests of the child. . . .” See *In re Zoey H.*, 183 Conn. App. 327, 344–45, 192 A.3d 522, cert. denied, 330 Conn. 906, 192 A.3d 425 (2018).

“On appeal, our function is to determine whether the trial court’s conclusion was legally correct and factually supported. We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous.” (Internal quotation marks omitted.) *In re Krystal J.*, 88 Conn. App. 311, 314–15, 869 A.2d 706 (2005).

Here, the respondent first takes issue with the need for the commitment of the minor child and certain factual findings set forth in the trial court’s April 5, 2018 adjudication of neglect. Because the respondent did not appeal from that judgment, he may not challenge it now.

As to the denial of his motion to revoke the commitment of the minor child, the respondent has not claimed that the court’s decision was not legally and logically correct. In fact, the respondent’s brief is devoid of legal analysis. Rather, the respondent urges this court to adopt an alternative view of the evidence presented to the trial court, a view that is favorable to him. It is not the role of this court to do so. The trial court considered the evidence presented, including seventeen exhibits that were admitted into evidence, and the testimony of a department program manager, a department program director, a department case supervisor, two department social workers, the respondent’s counselor, psychologist and court-appointed clinical psychologist, and the respondent himself. On the basis of its thorough and careful examination of that evidence, the court determined that the respondent failed to meet his burden of proving that the cause for commitment of the minor child no longer exists. On this basis of the record before us, we cannot conclude otherwise.

The judgment is affirmed.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon

order of the Appellate Court.

** March 19, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The mother of the minor child also filed a motion to revoke the commitment, but withdrew it during trial. Because the mother is not a party to this appeal, any reference herein to the respondent refers to the father.

[2] The respondent was appointed standby counsel.

[3] As for the respondent's motion for contempt, the court found, contrary to the respondent's allegations, that the department had complied with its mandate to act on the respondent's application, pursuant to the Interstate Compact Placement for Children, General Statutes § 17a-175, by continuing to consider the appropriateness of potential out of state resources, in addition to other family resources, for the minor child. Although the respondent purports to claim that the court erred in so ruling, he did not list the court's denial of his motion for contempt on his appeal form. Any challenge to that order is thus not properly before this court. See *State* v. *Misenti*, 112 Conn. App. 562, 563–64 n.1, 963 A.2d 696, cert. denied, 291 Conn. 904, 967 A.2d 1220 (2009).

[4] The court further found that it was not in the minor child's best interest to revoke the commitment. The respondent does not challenge this finding on appeal.